JANVIEB, Judge ad hoc.
 

 Prior to August 25, 1928, George Breaux was the qualified registrar of voters for the parish of Lafayette. On that day he was removed from his said office by the state board of registration, which, board assigned no reason for its action.
 

 The position of registrar of voters is created and controlled by the provisions of sec
 
 *397
 
 tion 18 of article 8 of the Constitution of 1921, which article reads in part as follows:
 

 “There shall be a registrar of voters for the parish of Orleans, who shall he appointed by the Governor, and one for each parish in the State, who shall be appointed by the police jury or other governing authority of such parish.
 

 “The Governor shall issue a commission to each registrar who shall thereupon make such bond, subscribe to such oath, and receive such compensation as the Legislature may prescribe ; provided, that the State and the parish shall each pay one-half of such compensation.
 

 “The Governor, Lieutenant-Governor, and Speaker of the House of Representatives shall compose the Board of Registration and any two members of same shall have power to remove, at will, any registrar in this State.
 
 ■A *
 
 *
 

 “Should a registrar be not appointed by December 15,1921, or any subsequent vacancy be not filled, within thirty days after its occurrence, by the above constituted authority, a majority of the Board of Registration shall appoint and the Governor shall commission a registrar of voters in each parish which has none.”
 

 Act No. 269 of 1926, § 1, which is the latest statute on the subject, amends section 15 of Act No. 122 of 1921 (Ex. Sess.) so that that section now contains the same provisions as does the above-quoted article of the Constitution.
 

 On September 13,1928, nineteen days after the removal of Breaux from the said office, the police jury of the parish, by a vote of S to 2, appointed him to the same office as his own immediate successor.
 

 Shortly thereafter, and before the expiration of thirty days from the date of Breaux’s removal, the board of registration appointed as registrar for the parish of Lafayette, Marshall Arceneaux, the present relator.
 

 Apparently fearful that the appointment of Arceneaux, having been made within the thirty-day period, was illegal, the board of registration, on October 16, 1928, again appointed Arceneaux to the position.
 

 Breaux refused to surrender the office, claiming it under the appointment of the police jury, whereupon Arceneaux brought this ouster proceeding under the provisions of Act No. 102 of 1928.
 

 The district court held that the action of the police jury in reappointing Breaux was a nullity, and that therefore, since the police jury had not within the thirty-day period filled the vacancy, the board of registration was within its right in appointing Arceneaux. The Court of Appeal for the First Circuit affirmed the judgment of the district court, and the matter is now before us for review.
 

 Arceneaux attacks Breaux’s title to the office on two grounds:
 

 First, that Breaux has never been commissioned by the Governor of the state and has not taken his oath of office.
 

 Second, that the removal by the board of registration disqualified Breaux from becoming his own immediate successor and made him ineligible for the position.
 

 The first ground, that Breaux, since his reappointment by the police jury, has not been commissioned by the Governor, has not given bond, and has not taken the oath of office, does not impress us. Had the Governor issued the commission, of course, the matter would not now be before us. The arbitrary refusal to carry out a ministerial duty cannot deprive the appointed officer of his rights resulting from the appointment. That the Governor has no discretion in the matter is manifest by a mere reading of the constitutional provision:
 

 
 *399
 
 “The Governor shall issue a commission to each registrar who shall thereupon make such bond, subscribe to such oath, and receive such compensation as the Legislature may prescribe.” Const. 1921, art. 8, § 18.
 

 Breaux could not furnish bond nor take the oath until the commission was issued, and the failure to issue the commission resulted from no fault óf his. The law considers that as done which ought to be done, and, if the appointment of Mr. Breaux by the police jury is valid, the commission ought to have been issued by the Governor, and, so far as the rights of Mr. Breaux jare concerned, if he is entitled to the office, he cannot be deprived of it by reason of the failure of the executive to issue the commission.
 

 “A statute providing that the office shall be vacant or declared vacant in case of a failure to qualify within the time prescribed only applies to cases where the officer is at fault, and the vacancy will not occur when full compliance with the law has been prevented by the neglect or the unlawful act or willful refusal on the part of some other officer to perform a duty imposed upon him in regard to the bond.” 46 C. J. p. 963.
 

 The second ground of attack is more serious. If Breaux, by reason of his prior removal, was rendered absolutely ineligible for reappointment, his selection by the police jury was a nullity,.and had no more effect than if no action whatever had been taken by that body.
 

 It is claimed that this ineligibility is twofold, in that it results from an affirmative provision contained in section 18 of article 8 of the Constitution 1921, to the effect that “no registrar of voters shall be elected or appointed to any other office within twelve months after vacating that of registrar”; and for the further reason that, to allow the police jury to reappoint a person who had been removed by the board of registration, would, in effect, give to the police jury the right to deprive the board of registration of its power of removal.
 

 With regard to the first ground, we are of the opinion that, to hold that the Constitution itself affirmatively prohibits a registrar from succeeding himself, would require that we ignore the plain meaning of the word “other” as it appears in the above-quoted provision from section 18 of article 8 of the Constitution.
 

 We must assume that the framers of the Constitution inserted the word “other” ex industria, and that they intended it to convey its usually accepted meaning. There can be no doubt that the word “other” ordinarily means “different from.”
 

 The American and English Encyclopedia of Law states that “the word ‘other’ means different from that which has been specified.”
 

 According to 29 Cyc. 1532: “The word has been defined as meaning different from that which has been specified; not the same; not this or these; different.” .
 

 Had the word “other” been omitted, there would be no doubt that a registrar could hold no office during the twelve months next succeeding the termination of his tenure of office as registrar. Since the word “other” was intentionally inserted in the provision of the Constitution, it is equally clear that it was intended that he could not, during the said twelve-month period, hold any other, or different office, but that he could be reappointed to that office.
 

 The last contention to which we have referred, and the one most strenuously urged, is that Breaux’s removal disqualified him and made him ineligible for reappointment, by reason of the fact that to hold otherwise would be in effect to deprive the board of registration of its power of’ removal.
 

 
 *401
 
 It is true that the continued reappointment by the police jury of the same person may, if persisted in, in effect, nullify the power of the hoard of registration to remove. It is, however, equally manifest that the board of registration, by immediately removing every appointee of the police jury, may in effect deprive that body of1 its right to appoint.
 

 True it is that courts should interpret legislative enactments as a whole, and, where possible, so construe them as to reconcile apparent inconsistencies, and we have labored diligently in an effort to find an interpretation of the articles and statutes in question which will give life and-meaning to each portion of all of them.
 

 In view of the fact that it is not within our power to legislate, but only to determine what those who did legislate intended, we can find no solution of the problem presented, and cannot abandon the letter of the enactments in an effort to discover the undisclosed intention of those who prepared them.
 

 Who can say whether it was intended that the secondary right of removal should be more sacred than the primary right of appointment?
 

 It should be remembered that the removal of Breaux was without cause. It is quite true that, under the quoted provisions of the Constitution and of the statutes, the board had the right to remove without cause, but removal without cause, under the great weight of the jurisprudence, carries with it no stigma, and attaches to the removed officer no ineligibility to thereafter hold office. In fact, in this state it seems well settled that even removal for cause, except by impeachment, does not necessarily brand the removed officer as ineligible to hold the same or any other public office.
 

 “It is plain therefore that, under our present organic law, only an impeached officer is subject to debarment from holding office after his conviction. An officer removed by the judgment of a district court cannot be so debarred, the penalty in such case being restricted merely to his removal from office.” Saint v. Irion, 165 La. 1062, 116 So. 549, 558.
 

 We are told by the greatest authority of all time that a man is not defiled from without, but only by the evil which lies within him. No cause for removal lay within Breaux, and no taint could be placed upon him from without by the whim or caprice of the board of registration which would render him ineligible.
 

 If, then, the ineligibility, if -there is any, results, not from.any inherent inability or incompetency or dishonesty within the person removed, but purely from the whim or caprice of the board removing, who can say how long this ineligibility exists? Suppose the personnel of the removing board should change over night and the new board should have no objection to the person who had been removed, is it not plain that his reappointment would meet with the approval of the board, and the reappointment, which it is now contended was null and void ab initio, would, by reason of inaction on the part of the board, become in all respects legal and valid?
 

 If an act is null and void ab initio, how can it be given life by inaction or by passive acquiescence? Must the police jury, in making its appointment, familiarize itself with the wishes of the board of registration, and make its appointment only in accordance with those wishes, or may it exercise its constitutional right freely and without initial inquiry into the political complexion of the board of registration?
 

 Certain officers in Louisiana are prohibited from succeeding themselves. The Governor of the state cannot succeed himself, nor can the treasurer of the state, but these
 
 *403
 
 inhibitions result from affirmative provisions of the Constitution; and the fact that the Constitution has expressly prohibited certain officers from succeeding themselves is a most potent argument to the effect that those officers who are not prohibited in express terms from succeeding themselves may do so. “Ex-pressio unius est exclusio alterius.”
 

 Our attention is called to the case of People v. Ahearn, 196 N. Y. 221, 89 N. E. 930, 26 L. R. A. (N. S.) 1153. We think that case distinguishable on two grounds: First, that the removal resulted only after a trial in which the incumbent was heard in his own defense and was found guilty; and, second, the incumbent was removed during a fixed term.
 

 Here the registrar of voters holds office at the pleasure of the board. There is no fixed term, and it cannot be said that his removal had the effect of making him ineligible for the balance of his term. It might be said with reason that if a registrar of voter's was appointed for a fixed term — say one year or four years — and was removed during that term, that the removal itself might disqualify him from being reappointed for the balance of his own unexpired term. But, since the registrar holds office at. the pleasure of the board, his removal by the board terminates the term, and a new, indefinite term immediately commences. It appears to us that he is as eligible to fill the office for the new term as any one else might be. Among the cases called to our attention, that of State ex rel. Tyrrell v. Jersey City, 25 N. J. Law, 536, appears most nearly applicable here. There the court said:
 

 “We are of opinion that the sentence of expulsion, or a motion; did'not disqualify Tyr-rell to be re-elected to the same office. When the council expelled him, they had exhausted their power; their authority went no further; the charter does not annéx to the sentence of expulsion that of disqualification; nor have the council, nor could they legally. Where the law annexes a disqualification to an of-fence, as part of its punishment, it does it in express terms. Constitution of U. S., art. 1, § 3, pi. 7; Constitution of N. J., art. 6; § 3, pi. 3; Nix. Dig. Tit. ‘Witness’ § 1. It was argued, with some earnestness, that the virtual effect of the re-election in this case was to reverse the judgment of the common council, and that the electors of the ward had no power to do that. The conclusion may be admitted if the premises are sound. But in point of fact here is no reversal of the judgment ; that was executed; the offendqr was deprived of his office. The judgment was a judgment of expulsion, and that was carried into effect. The judgment extended no further, it was not a judgment of disqualification operating in futuro. The law does not add that penalty to the offence of which he was convicted, and we can add nothing to the law. * * * As future disqualification is no part of the sentence authorized or inflicted, no such effect can be given to it by the court.”
 

 The situation as it now exists is most unfortunate, but we are powerless to correct it, in view of the existence in the Constitution of provisions apparently absolutely inconsistent and antagonistic. We can only express the hope that those responsible for the unfortunate situation will realize the harm that may result from persisting in opposing the will of one another; for, if the board should remove Breaux again, thus disclosing an intention to exercise the authority to remove him as often as the police jury may exercise its right to reappoint him, such repeated reappointments would result in endless confusion. It must be borne in mind that the power of the board of registration is confined to the power of removal only, and that it has no right of selection or appointment un
 
 *405
 
 less the police jury may see fit to give it that power by failing to exercise its right within thirty days after the exercise by the board of its power of removal. The framers of the Constitution had in mind that the board of registration would not abuse its authority by xemoving a registrar for a selfish or an unjust motive or without some cause pertaining to the welfare of the citizens of the parish; and we take it for granted that the board, in this instance, will be governed accordingly. We take it for granted also that the police jury will find its way out of the cul-de-sac by showing due respect for the authority of the board of registration, assuming, of course, that the authority is exercised in good faith. It is not possible for this court, or any other court, to prevent an impasse in any case where the Constitution gives to one person or to one body the arbitrary power to remove a person from office and gives to another person or to another body the exclusive authority to appoint or to elect his successor. The only solution is that the power or authority shall not be exercised arbitrarily or stubbornly.
 

 The judgment of the district court and of the Court of Appeal is annulled, and the relator’s suit is dismissed, and his demand rejected at his cost.