OVERTON, J.
 

 These three proceedings are intrusion into office suits, instituted under Act 102 of 1928, amending and re-enacting sections 2593, 2594, and 2597 of the Revised Statutes, whereby the plaintiff, in each case, is seeking to oust the defendant therein, whose name is expressed in the title, as a member of the Morehouse parish school board, and hav.e himself seated instead. The cases come here on writs of review from the Court of Appeal. As there is no marked difference between the issues and the facts in each, they will be disposed of in one opinion. They were briefed as one ease.
 

 The cases grow out of the appointment by the Governor of the plaintiff in each case to fill an alleged vacancy on the school board of Morehouse parish, made by commission issued on October 17, 1930. The plaintiff A. P. Wimberly was appointed to fill a vacancy in ward 5 of the parish; the plaintiff E. N. Gray was appointed to fill a vacancy in ward 8; and the plaintiff J. T. White was appointed to fill one in ward 7. On the day following the appointments, each qualified by taking the required oath. At the time of their appointment and qualification, the defendant E. H. Barham was filling the office from ward
 
 5';
 
 
 *491
 
 the defendant Windsor Pipes was filling the office from ward 8; and the defendant Henry Mason was filling the office from ward 7. Each of these defendants, however, was holding, at that time the office of postmaster, under the United States. Each one of them refused to recognize that a vacancy existed in the office held by him, as a member of the school board, and refused to surrender the office to the one appointed to fill the vacancy. Hence the present suits- were instituted.
 

 There was judgment in the district court for the plaintiff in each case. On appeal to the Court 'of Appeal, these judgments were' affirmed. 133 So. 809, 812. The Morehouse parish school board, which was originally a party defendant, passed out of the case before these judgments were rendered, and is not before this court.
 

 Defendants urge under exceptions of no cause or right of action that, if vacancies did not exist on the school board in the three wards named, on October 17,1930, when plaintiffs were appointed, the commissions issued to plaintiffs are null and void, and confer upon them no right to maintain these suits., This rests upon the hypothesis, which is correct, that the Governor cannot 'remove a member of the school board and thereby create a vacancy, but may appoint only to fill vacancies. But defendants go further by urging that, if there is a dispute as to whether a vacancy exists; the power t'o appoint does not exist until the vacancy be judicially declared in appropriate proceedings. However, we are .unable to approve of defendants’ last position. The power to appoint implies the power to ascertain primarily whether a vacancy exists, and, if it be found to exist by the appointing power, then that power may make the appointment. If the incumbent of the office concludes that no vacancy existed at the time of the appointment, he may then force a judicial determination of the question, and, if it be found upon the trial that none existed, the court will annul the appointment, and maintain the incumbent in office, but, if the court should find that a vacancy clearly existed, it will recognize the commission and put the appointee in office. This seems to be supported by the trend of the authorities. See State ex rel. Arcenaux v. Breaux, 169 La. 394, 125 So. 283; State ex rel. Saint v. Irion, 169 La. 481, 125 So. 567, where it was assumed without question that such was the law. The case of State ex rel. Lemonnier v. Beard, 34 La. Ann. 273, not only is not in conflict with this ruling, but is direct precedent in support of it.
 

 Defendants .have also filed pleas in abatement in which they urge that these suits have abated by reason of the fact that the Governor, after the institution of the suits, in effect canceled and revoked the commissions issued by him to plaintiffs. The letter, relied on to show the cancellations, was written over a month after plaintiffs had qualified. Aside from whether the Governor could revoke the commissions at that time, as a matter of fact the Governor did not revoke them, but merely requested their return, as a personal favor, together with the resignations of the recipients. This request was not complied with. The facts, therefore, do not show abatement of-the suits.
 

 The merits .of the case present the questions whether or not a member of a parish school board is an officer under the state within the contemplation of section 4 of article 19 of the Constitution of 1921; whether a person may qualify lawfully as a member of the school board while holding the office of postmaster; the effect of accepting and holding a postmastership after one has qualified as a member of a parish school board, and while he is still holding such membership; and the effect of resigning as postmaster upon the right to con
 
 *493
 
 tinue to hold membership on the school board, the resignation being accepted after the institution of an ouster suit, but before the rendition of judgment therein by the trial court.
 

 The very basis of the answers to the foregoing questions is to be found in section 4 of article 19 of the Constitution of 1921, -which reads as follows: “No member of Congress, nor person holding or exercising any office of trust or profit under the United States, or any State, or under any foreign power shall be eligible as a member of the Legislature, or hold or exercise any office of trust or profit under the State; nor shall any person hold or exercise, at the same time, more than one office of profit except that of Justice of the Peace or Notary Public. Provided, this section shall not apply to Officers in the Reserve of the United States Army, Navy, Marines, and National Guard.”
 

 A postmaster is an officer under the United States, and his office is one of profit. USCA title 5, § 361; Tit. 39, §§ 31, 34, 53. This is not disputed. A member of a parish school board is also an officer. He exercises a part, though small, of the sovereign power, in the interest of the public, under authority vested in him by the state. He is elected by the people, save when, by reason of a vacancy caused by death, resignation, or otherwise, it is made the duty of the Governor to appoint some one to fill the vacancy. His qualifications are prescribed by law. The Legislature refers to his position as an office. Section 17 of Act 100 of 1922.
 

 However, an essential question to be answered is, Is membership on a parish school board the holding of an office of profit under the state, within the contemplation of section 4 of article 19 of the Constitution? It is not disputed that it is an office of profit, but it is disputed that it is an office under the state. What is an office under the state, or “a state office,” as such an office is frequently referred to in the jurisprudence of this state, is not easily definable with accuracy, if it may be defined with accuracy at all, for so much depends upon the context of .the statute in which the term is used. It may be given a narrow or broad meaning according to the context and the object of the statute to be accomplished. A state officer, or officer under the state, may be defined as one selected by authority of the state, whose duties concern the state at large, or the general public, although exercised within defined territorial limits, such, for instance, as the secretary of state, the Attorney General, whose jurisdiction is state-wide, and district judges, sheriffs, and clerks of court of the various parishes whose territorial jurisdiction is limited. State ex rel. Saunders v. Ivohnke, 109 La. 838, 846, 33 Sov 793.
 

 Applying this definition, it may be observed that the public school system of the state is a state institution. This is obvious from section 1 of article 12 of the Constitution, which provides that: “The educational system of the State shall consist of all free public schools, and all institutions of learning, supported in whole or in part by appropriation of public funds. * * * ” This ruling is supported by State ex rel. Board v. City of New Orleans, 42 La. Ann. 92, 100, 7 So. 674, where, under similar constitutional provisions, the same ruling was made.
 

 Parish school boards are not created by the Constitution, though that instrument, in section 10 of article 12 thereof, directs the Legislature to create such boards. In obedience to this constitutional mandate, the Legislature has created a parish school board for each parish of the state, and made each board a body corporate. Section 17 of Act 100 of 1922. Each of these bodies corporate forms part of one educational system, under the general control and supervision of the state board of
 
 *495
 
 education. Act 100 of 1922; Const. § 6, art. 12. As each parish school board constitutes part of the educational system of the state, which is a state institution, it would appear that the members of each such board, who; as we have seen, are officers, their offices being created by the Legislature, under a constitutional mandate, are officers under the state, laboring in the service of the state, although their duties as, members of the respective parish boards are confined to limited territories. This conclusion finds support, by parity of reasoning, in State ex rel. Smith v. Theus, 114 La. 1097, 38 So. 870, where it was held that a parish superintendent of schools was a state officer, although his duties are limited within the bounds of the parish for which he is elected.
 

 The office of postmaster being an office under the United States, and the office of member of a parish school board being an office under the state, it is obvious that one person, under the clear language of section 4 of article 19 of the Constitution, cannot hold or exercise both at the same time.
 

 Two of the defendants, namely, Pipes and Mason, were holding the office of postmaster when they qualified as members of the school board, and the third, namely, Barham, was a member of the school board when he qualified as postmaster. The questions therefore arise as to what effect the qualifying as member of the school board had while holding the office of postmaster, and as to what effect the qualifying as postmaster had while holding the office of member of the school board on the latter office.
 

 Referring to provisions similar to those contained in section 4 of article 19 of the Constitution, it is'said in 46 C. J. p. 947, § 55, that:
 

 “It is well settled that the acceptance of a second office of the hind prohibited operates ipso facto absolutely to vacate the first, although if the first office is in the United States government and the second office in a state government, the second office is treated as the forbidden office. This distinction between double office holding where the first office was a federal or foreign office does not enlarge or affect the" incumbent’s disqualification for holding a second office under the state, but merely prevents the automatic vacation of the federal office by the acceptance of, and attempted qualification for, the state office, which to be valid and effectual must be preceded by an actual vacation of the other office. Thus one holding an office of profit under the federal government is not, under such statutes, ineligible to election "to a state office, although he cannot qualify so long as he retains his federal position.”
 

 In support of this doctrine may be cited the following cases: State v. De Grass, 53 Tex. 387; Bunting v. Willis, 27 Grat. (68 Va.) 144, 21 Am. Rep. 388; Foltz v. Kerlin, 105 Ind. 221, 4 N. E. 439, 5 N. E. 672, 55 Am. Rep. 197.
 

 Therefore, so far as relates to Pipes and Mason, their qualifying as members of the school board was ineffective and null, because they did not surrender their offices as postmasters — offices over which the state has no control, and from which the state can, or could not, expel them — before attempting to qualify as members of the school board. As to Barham, who qualified as postmaster after he had qualified as a member of the school board, the effect of his qualifying as postmaster was to vacate the office of member of the school board, over which the state has control.
 

 As to Pipes’ resignation of the office of postmaster before judgment was rendered in the district court, the resignation was too late. He should have surrendered the office before he attempted to qualify as a member of the school board. As his qualification was null and of no effect, he is in the position of
 
 *497
 
 one who has not qualified. It is too late for him to qualify legally after the expiration of thirty days from the date of his commission. The office, by such failure, became vacant. Act 19 of 1878.
 

 When plaintiffs were appointed, these offices were being held in contravention of the Constitution. They were vacant in contemplation of law. Oliver v. City of Jersey City, 63 N. J. Law, 634, 637, 44 A. 709, 48 L. R. A. 412, 76 Am. St. Rep. 228, 231. The Governor had authority to fill the vacancies by appointment. Section 17 of Act 100 of 1922. Each plaintiff is therefore entitled to the office to which appointed.
 

 The three judgments under review are at'-' firmed.