This is a suit instituted by the District Attorney of the Fifteenth Judicial District Court, at the written request of resident citizens and taxpayers of Ward Four of the Parish of Acadia, to have the defendant, Armas Ledoux, a member of the school board from that Ward of the Parish removed from office. The suit is brought *Page 189 
under the provisions of Section 6 of Article IX of the Constitution of 1921.
In the petition presented to the Court it is alleged that Armas Ledoux is a member of the Acadia Parish School Board from Ward Four of that Parish; that he was unable to read and write at the time of his election and because of his incompetency he is not qualified to be such member. The prayer is for judgment removing him from his office.
Attached to the petition is the written request addressed to the District Attorney informing him (1) that the defendant is unable to read and write and because of that inability he is requested to institute a suit for his removal from the school board and (2) that they have employed Mr. N. Curtiss Petitjean, at their own exclusive costs, as counsel to aid him in instituting and conducting the suit. The request contains 50 or 51 signatures.
Suit was filed on December 6, 1940, and on December 18th following a motion was presented to the district court by the special attorney employed by the taxpayers, and not signed by the District Attorney, suggesting to the Court that under Section 7 of Article IX of the Constitution, plaintiff desires that the defendant be suspended from office during the pendency of the suit. The district judge signed an order on the same day directing the defendant to show cause in open court on or before the eleventh day after service of the rule, why judgment should not be rendered suspending him as a member of the Acadia Parish School Board during the pendency of the suit. The defendant was duly notified of the granting of the order of Court on December 19, 1940, and on December 30th filed certain exceptions to plaintiff's petition and to the rule taken upon him to show cause why he should not be suspended and also on that day he filed his answer to both the petition and the rule.
In the meantime several of the signers of the written request to the District Attorney withdrew their names but this is a matter of no importance as notwithstanding these withdrawals there remained a sufficient number of signers to carry on the proceeding.
The exceptions filed by the defendant to the rule were (1) that the District Attorney did not sign the motion for suspension, (2) to the jurisdiction of the Court ratione materiae, (3) that the rule did not set forth a cause of action and (4) that it did not set forth a right of action. The exceptions filed to the petition were (1) to the jurisdiction of the Court ratione materiae, (2) no cause of action (3) no right of action and (4) that the petition was not signed by a sufficient number of citizens and taxpayers. In his answer defendant denies all of the allegations of the petition and he prays for a trial by jury. He also reserves his rights to file a suit for damages for malicious prosecution.
After trial of the rule on the exceptions and on the merits the district judge overruled the exceptions and rendered judgment making the rule absolute. The judgment orders the suspension of the defendant from his office as a member of the School Board from Ward Four of the Parish of Acadia during the pendency of the suit. From that judgment the defendant has appealed.
In this Court counsel representing the taxpayers filed a motion to have the appeal transferred to the Supreme Court of the State on the ground that the defendant is a State officer and under the provisions of Section 7, Article IX of the Constitution, the appeal should have been taken to that Court.
The only issue involved in that motion is whether or not the office of member of a Parish School Board is a State office so as to make an appeal in any case in which it may be involved returnable to the Supreme Court. Under the provisions of the Constitution of 1879, Article 201, those of the Constitution of 1898, Article 222 and also those of the Constitution of 1913, Article 222, appeals in cases for removal of State and District officers such as district attorneys, clerks and sheriffs, members of the State Board of Appraisers and Railroad Commissioners were made returnable to the Supreme Court and it was further provided that, "in cases against all other officers the appeal shall be to the court of appeals of the proper circuit." The provision of the Constitution of 1921, Section 7 of Article IX gives a right of appeal to the State, Attorney General, District Attorney or any person at whose instance a suit is brought and "in cases of state and district officers, the appeal shall lie to the Supreme Court; * * *." It is then further provided that "all other appeals shall lie to the courts of appeal having territorial jurisdiction." Whilst the provisions of the Constitution of 1921 are not as specific as those of the prior constitutions in which *Page 190 
particular officers are enumerated we nevertheless believe that by the general terms used, the Constitution meant that the same provisions relating to appeals would apply. In mentioning State and district officers, it undoubtedly has reference to the same class of State and district officers as those named in the prior constitutions and appeals with regard to those officers shall lie to the Supreme Court. With regard to all other appeals, evidently those in cases of all other officers, the appeal goes to the Court of Appeal having territorial jurisdiction. It is obvious that an appeal from a judgment against a ward officer such as a member of a parish school board or of a police jury of a parish would not lie to the Supreme Court but to the proper Court of Appeal of the Circuit in which the Parish is situated.
Counsel representing the resident taxpayers in the motion to transfer the appeal seems to rely on the case of State ex rel. Wimberly v. Barham et al., 173 La. 488, 137 So. 862 in which the question of jurisdiction was not involved but the issue presented was whether or not a member of a parish school board was an officer under the State as distinguished from an officer under the Government of the United States within the meaning of Section 4 of Article XIX of the Constitution of 1921 and therefore was prohibited by said provisions of the Constitution from holding both the office of U.S. postmaster and that of member of a parish school board at the same time. We do not think that the case has any application to the question which is here presented and are clearly of the opinion that for the purpose of considering it, the defendant member of the school board herein is not a State officer but one of those officers in whose case involving removal or suspension from office, the appeal lies to this Court. The motion to transfer the appeal is therefore overruled.
Most of the testimony taken at the trial of the rule in the Court below related to the signatures of the resident taxpayers to the request addressed to the District Attorney but even after allowing for the withdrawal of a number who had requested that their names be stricken from the request, there remained a sufficient number and that question seems to be no longer disputed. The defendant who was called as a witness to testify concerning his ability to read and write stated that his knowledge was limited to the signing of his name and perhaps the writing of figures.
As we have already stated the District Attorney did not sign the motion presented to the Court under which the rule for suspension during the pendency of the suit was tried. The District Attorney has filed a memorandum in this court in which it is indicated that he did not sign it because he felt that there was no great need for such action and that no harm could possibly come to anyone by permitting the case to be tried on its merits. The fact remains however that he urged no objection to the filing of the rule nor to its trial when it came up for hearing. Under the circumstances the trial judge had the right to assume that he had tacitly consented to its filing and acquiesced in its trial and he properly heard evidence and rendered judgment thereon.
The foregoing disposes of all the preliminary matters in connection with the suit and we come now to consider the vital and serious issue that is presented, that is, the one involving the right of a district judge in the exercise of his discretion to suspend a duly elected public officer pending the trial of a suit brought against him to have him removed from office. It is no doubt a grave responsibility and one with which a district judge was not invested under all Constitutions of this State prior to that of 1921.
In discussing the matter intelligently we should start off with the cause for which removal or suspension is sought.
Section 10, Article XII of the Constitution of 1921 charges the Legislature with the duty of creating and providing for the election of parish school boards. Acting under that authority the Legislature, by Act 100 of 1922 (Dart's General Statutes, Section 2236) enacted a law providing for parish school boards for each of the parishes of the State and under Section 17 of the Act prescribed, among others that "to be a member of a parish school board one shall, in addition to the qualifications otherwise prescribed by law, be able to read and write * * *." It would appear therefore that ability to read and write is to be regarded as a qualification for eligibility to membership on a parish school board. The lack of this qualification, it is to be noted, is the only cause advanced by the resident taxpayers *Page 191 
of Ward Four of the Parish of Acadia for the removal of the defendant member of the school board from that ward in this case.
Article IX of the Constitution of 1921 is the one having to do with impeachment of public officers and their removal from office. Under section 1 of the Article it is provided that "all State and district officers, whether elected or appointed, shall be liable to impeachment for high crimes and misdemeanors in office, incompetency, corruption, favoritism, extortion, or opression in office, or for gross misconduct, or habitual drunkenness." Lack of any special or prescribed qualification is not made one of the grounds of impeachment, and the only one of the enumerated grounds which may bear any relation whatever to any lack of such qualifications would be incompetency.
Section 2 of the Article relates to the procedure in matters of impeachment, section 3 to the addressing out of officers by the Legislature, section 4 to the removal of judges of the Supreme Court, section 5 to the removal of judges of courts of record and section 6 to the removal of any officer, whether State, district, parochial, ward or of a municipality, except the Governor, Lieutenant Governor and judges of courts of record. This section 6, like all of the preceding sections starts out by stating that "for any of the causes enumerated in Section 1 hereof," such officers as are referred to may be removed by judgment of the district court of his domicile. The section then provides the method of initiating the proceeding which seems to have been followed in this case.
Following section 6, section 7 contains the following provision, the very important part of which relating to a rule for suspension, did not exist in any of the prior constitutions: "No suit for removal shall work a suspension from office; but the trial court may, by rule nisi and contradictory hearing, after ten days notice, suspend any officer, subject to a review by the proper appellate court, and such office shall be filled by the appointing power until the cause is finally decided." Undoubtedly if the trial court has the power to remove an officer, it has the right, after hearing on a rule nisi to suspend him pending the trial of the suit, and it may do that, for any of the causes set out in section 1 of the Article IX, among which is included incompetency. The important question therefore is what is meant by incompetency and how is that word to be construed in connection with the purpose for which it is used in that section and article of the Constitution relating to the impeachment of public officers and their removal from office.
We can very well understand how important and how necessary it may be for a person occupying the office of member of a parish school board to be able to read and write and whilst, as we have already noted his ability to do so is prescribed among others as one of the qualifications which he must possess in order to hold the office, the specific question that is presently before us may be stated as follows: Is such a person who does not possess that qualification but who nevertheless has been elected to the office and has filled it for a considerable number of years, incompetent
in the way that he can be suspended during the pendency of a suit brought to have him removed on that ground alone?
We have made a rather exhaustive search of authority on the subject and whilst there is a vast amount of cases dealing with the suspension and removal of officers on nearly all of the other grounds enumerated in section 1, Article IX, there is certainly a scarcity of cases dealing with incompetency as a cause for such removal and suspension. Where it is referred to, it seems to be mentioned in a most general sort of a way and relates to some other matters than a lack of qualification arising out of inability to read and write. Moreover in most of the cases, no matter what the cause for removal may be, it appears that it was such a cause as did not exist at the time of the officer's election to his office.
In 92 A.L.R. page 988, there is reported the case of State ex rel. Hardie v. Coleman, a Florida case reported in 115 Fla. 119,155 So. 129, 133. It involved a suit for suspension of a sheriff on various grounds including malfeasance, misfeasance, nonfeasance, neglect of official duties, the commission of a felony, drunkenness and incompetency. The court considered what was meant by each of these causes and what they had reference to and with regard to incompetency, had this to say: "Incompetency as a ground for suspension and removal has reference to any physical, moral, or intellectual quality, the lack of *Page 192 
which incapacitates one to perform the duties of his office. Incompetency may arise from gross ignorance of official duties or gross carelessness in the discharge of them. It may also arise from lack of judgment and discretion or from a serious physical or mental defect not present at the time of election, though we do not imply that all physical and mental defects so arising would give ground for suspension." (Italics Ours).
In Words Phrases, First Series, Vol. 4, page 3508 it is stated: "By `incompetency,' as used in the title relating to the removal of officers, is meant gross ignorance of official duties or gross carelessness in the discharge of them, or an officer may be found to be incompetent when, by reason of some serious physical or mental defect, not existing at the time of hiselection, he has become unfit or unable to discharge promptly and properly the duties of his office." The authority cited is Revised Statutes of Texas, Article 3533. Vernon's Ann.Civ.St. Art. 5972. (Italics Ours).
In both of these definitions of the word "incompetency" in connection with those provisions of law relating to the removal and suspension of officers it is to be observed, as already brought out, that the incompetency must be one which has arisen since and did not exist at the time of the election of the officer sought to be removed or suspended. This seems to be an important and controlling consideration. The meaning otherwise given to the term also indicates that the defect under which he is laboring has to be one that has made him unfit or unable to continue to hold the office since the time he has assumed the discharge of his duties. If that be a controlling factor, as we think it is, naturally it would not apply in the present case since under the very allegation in which the cause for removal is stated the defendant was unable to read and write at the time of his election.
But we are of the opinion that in the matter of the suspension of an officer pending the trial of a suit brought against him for his removal, the incompetency must be one arising from some physical, moral or intellectual deficiency which causes his remaining in the office to be a matter that is one of public notoriety and which might operate against the public welfare and good morals if he be permitted to continue holding the office during the pendency of the suit. If it is not in fact a mental, physical or moral condition involving moral turpitude it must be one so akin to it that the district judge for the safe and proper maintenance and conduct of the office would find it necessary to suspend him until his suit can be tried. It is to be noted that the term found in the article of the Constitution is associated with such acts as would of themselves cause public scandal and subject the dignity of the office to public ridicule if the incumbent be left in the discharge of its functions and duties. It amounts to more than to his not being able to read and write.
That is the interpretation we give to the word as used in relation to the suspension of a public officer from office and that is why we have laid emphasis on the grave responsibility of the trial judge in the use of his discretion in suspending such officer until his suit for removal can be heard and tried, especially so by a jury as he has a right to demand, and which the defendant in this case has prayed for. He should only suspend in cases where, to maintain the officer in his position, would be detrimental to the moral, social and economic welfare of the public having to deal with his office. Such condition does not exist nor can it arise in this case from the cause for which the defendant has been suspended and we are of the opinion that the trial judge has made improper use of his discretion.
It is for the reasons stated now ordered, adjudged and decreed that the judgment of January 2, 1941, which made the rule for suspension herein absolute and which suspended the defendant, Armas Ledoux, from office during the pendency of this suit, as a member of the Acadia Parish School Board, Ward Four of said Parish, be now reversed, set aside and annulled and it is further ordered that this cause be now remanded to the district court for further proceedings according to law. All costs incurred in the trial of this rule in the lower court and on this appeal are to be paid by the plaintiffs herein, and all other costs to await the final determination of the suit. *Page 193