144 So.2d 603 (1962)
Allen T. TICHENOR, Sr.
v.
ORLEANS PARISH SCHOOL BOARD.
No. 784.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1962.
Lawrence Hennessey, Jr., New Orleans, for plaintiff-appellant.
Samuel I. Rosenberg, New Orleans, for defendant-appellee.
Before FRUGÉ, MENUET, and ELLIS, JJ.
FREDERICK S. ELLIS, Judge pro tem.
This suit is brought by Allen T. Tichenor, Sr. against the Orleans Parish School Board praying that the dismissal of plaintiff by the Board be set aside, and that plaintiff be reinstated as tenured teacher in the Orleans Parish Public School System. Plaintiff also asks for his full salary from the date of his suspension until the date of his reinstatement.
The record reveals that by letter dated May 8, 1961, James F. Redmond, Superintendent of Schools in Orleans Parish charged plaintiff with incompetency and willful neglect of duty, the basis of the charges being the following acts allegedly done by him:
"a. On January 16, 1961, inform Mr. William C. Petersen, Acting Principal of Francis W. Gregory Junior High School, that he would not permit Mr. Petersen to enter his classroom for the purpose of assisting Mr. Tichenor in improving his mode and method of instruction; and,
"b. On January 30, 1961, refuse to allow Mrs. Ruth Little, Consultant, to *604 enter his classroom for the purpose of giving Mr. Tichenor direct assistance in techniques and procedures; to assist and advise him in the use and preparation of materials; and to give him demonstrations and other related functions; and,
"c. On March 6, 1961, refuse to allow Mr. Edwin F. Stumpf, Jr., Director of Secondary and Vocational Education, to enter his classroom for the purpose of assisting him in his instructional techniques and in the development of his program of instruction and in other related matters; and,
"d. On March 20, 1961, advise Mr. A. S. Sonntag, Assistant Superintendent in Charge of District II, that he would not allow anyone to observe the conduct of his classroom; and,
"e. On March 22, 1961, when Mr. A. S. Sonntag called Mr. Tichenor's attention to the provision of Section 123 of the Rules and Regulations of the Orleans Parish School Board and of the New Orleans Public Schools (1930) advise Mr. Sonntag that he considered said regulation illegal; and,
"f. On April 21, 1961, again refuse to allow Mr. Edwin F. Stumpf, Jr., to enter his classroom, after being advised by his principal, the Assistant Superintendent in Charge of District II, and the Acting Assistant Superintendent in Charge of Instruction so to do."
Pursuant to that letter, at its meeting of May 8, 1961, the School Board suspended Mr. Tichenor from his duties and he was duly notified thereof by a letter written by the secretary of the Board dated May 9, 1961 which is also in the record. The Board advised him that a hearing would be held concerning the charge on May 22, 1961. Mr. Tichenor filed what he termed exceptions and answer to the charges made against him with the School Board.
Without going into detail, it suffices to say that the allegations of the pleading filed by Mr. Tichenor set forth three basic grounds for his defense.
The first of these was directed to the fact that the School Board superintendent and its attorney had been addressed out of office by the Louisiana State Legislature and that the Board was therefore without authority to act. The second basis for defense is that the reasons set forth in the letter written by Dr. Redmond are not in fact the true reasons for the dismissal of Mr. Tichenor but that he was dismissed solely because of his activities in support of segregation in the Orleans Parish School System. He further alleged that the action of the School Board was taken out of prejudice against Mr. Tichenor and that the School Board could not give him a fair and impartial hearing. The third ground for his defense is a general denial of the charges set forth in the letter written by Superintendent Redmond.
With reference to the status of the School Board and its superintendent and attorney, same has been settled in the Federal Courts and it is no longer contended that either the Board or its officials were without authority to act.
Neither is there anything in the record to substantiate the allegations of prejudice or lack of ability to grant to Mr. Tichenor a fair and impartial trial. The court has read with great interest the voluminous transcript of the hearing held before the School Board and it appears therefrom that the plaintiff was granted a full and complete hearing on all matters pertaining to his defense with virtually all of the testimony offered by the defendant being admitted in evidence without regard to its competency or relevancy or lack thereof. Even if a showing of prejudice against plaintiff had been made, the School Board is still the only public body authorized by law to hold a hearing on the dismissal of a teacher, Bourgeois v. Orleans Parish School Board, 219 La. 512, 53 So.2d 251 (1951).
The only real question before this court for consideration is whether or not the acts *605 alleged in the letter written by Dr. Redmond were actually committed by the plaintiff, and if so, if such acts constitute incompetency and willful neglect of duty within the purview of the Teachers' Tenure Law.
On the question of fact involved, there can be little doubt that the acts complained of were committed by Mr. Tichenor. In the case of his refusal to admit Mrs. Little, his reasons for doing so, as well as the fact of his refusal were taken down by Mr. Petersen, the principal, and read back to Mr. Tichenor.
Mr. Tichenor stated during the School Board hearing that he had not refused admittance to anyone, but rather said only that he did not want them to come into his room. This testimony is in direct conflict with that of Mr. Petersen, Mrs. Little, Mr. Stumpf, and Mr. Sonntag, all of whom testified to the fact that Mr. Tichenor refused them admittance. He persisted in this attitude after conferences were held, and after he was read the School Board Regulations pertaining to such matters. There is nothing arbitrary or capricious about a finding that the facts as set forth in the letter written by the Superintendent were proven.
It only remains to consider whether or not the finding that such conduct on the part of appellant constituted incompetency and willful neglect of duty was arbitrary or capricious.
LSA-R.S. 17:443 reads as follows:
"A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any matter performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction."
No appellate court in this state has defined incompetency within the meaning of the Teachers' Tenure Act. The case of State ex rel. de Bellevue v. Ledoux, 3 So. 2d 188 (La.App.1941), in which the dismissal of a School Board member for incompetency was sought, quoted the following definition:
"Incompetency as a ground for suspension and removal has reference to any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office. Incompetency may arise from gross ignorance of official duties or gross carelessness in the discharge of them. It may also arise from lack of judgment and discretion or from a serious physical or mental defect not present at the time of election, though we do not imply that all physical and mental defects so arising would give ground for suspension."
County Board of Education of Clark County v. Oliver, 270 Ala. 107, 116 So.2d 566 (1959) defines incompetency as follows:
"`Incompetency' is a relative term which may be employed as meaning disqualification, inability or incapacity. It can refer to lack of legal qualifications or fitness to discharge the required *606 duty. It may be employed to show want of physical or intellectual or moral fitness."
The case of Beilan v. Board of Public Education, School District of Philadelphia, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958) reviews a similar case to this one, wherein a teacher refused to answer certain questions pertaining to prior Communist activities. His dismissal was predicated upon his refusal to answer, and not upon his possible disloyalty, which was not at issue. The Supreme Court of Pennsylvania had found that the above described conduct constituted incompetency within the meaning of the Pennsylvania Public School Code of 1949. In discussing the matter the United States Supreme Court said:
"By engaging in teaching in the public schools, petitioner did not give up his right to freedom of belief, speech or association. He did, however, undertake obligations of frankness, candor and cooperation in answering inquiries made of him by his employing Board examining into his fitness to serve it as a public school teacher.
"`A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted.' Adler v. Board of Education, 342 U.S. 485, 493, 72 S.Ct. 380, 385, 96 L.Ed. 517."
The judgment appealed from was affirmed, and the following language of the Pennsylvania Supreme Court was quoted:
"The term `incompetency' has a `common and approved usage.' The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C.J., with reference to a number of supporting decisions, it is defined: `A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty.' In Black's Law Dictionary, 3rd edition, page 945, and in 1 Bouv. Law Dict., Rawle's Third Revision, p. 1528, it is defined as `Lack of ability or fitness to discharge the required duty.' Cases construing the word to the same effect are found in 4 Words and Phrases, First Series, page 3510, and 2 Words and Phrases, Second Series, page 1013. (*) Webster's New International Dictionary defines it as `want of physical, intellectual, or moral ability; insufficiency; inadequacy; specif., want of legal qualifications or fitness.' Funk & Wagnalls Standard Dictionary defines it as `General lack of capacity of fitness, or lack of the special qualities required for a particular purpose.'"
In the case of State ex rel. Williams v. East Baton Rouge Parish School Board, 36 So.2d 832 (La.App.1948) involved a situation in which a number of school bus drivers (who at that time enjoyed tenure similar to that of teachers under Act 185 of 1944) deliberately refused to answer certain questions propounded to them by the School Board. The court found that they had a duty to answer the circulars sent them, and that their failure to do so constituted willful neglect of duty.
In the instant case, Mr. Tichenor steadfastly refused to allow certain supervisory personnel to enter his classroom, even after he was advised that the regulations of the Orleans Parish School Board specifically required him to do so.
Certainly, he was subject to regulations propounded by the governing authority *607 placed over him by the laws of this state, and had a duty to obey those regulations.
We find nothing arbitrary or capricious in the action of the Orleans Parish School Board in finding Mr. Tichenor guilty of incompetency and willful neglect of duty under the terms of LSA-R.S. 17:443.
The judgment appealed from is, accordingly, affirmed.
Affirmed.