750 P.2d 860

**Evangeline WHEELER,
Plaintiff–Appellant,
Cross Appellee,**

v.

**YUMA SCHOOL DISTRICT NO. ONE OF YUMA COUNTY, Arizona; and Wade Noble, Mary Otondo, Robert E. Kelly, Ron Watson, Kitti Braden, the Board of Trustees of Yuma School District No. One, Defendants–Appellees, Cross Appellants.**

**No. CV–86–0645–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 2, 1988.

Bowman & Smith, P.C. by Wm. Michael Smith, Mary E. White, Yuma, for plaintiff-appellant/cross appellee.

Jones, Skelton & Hochuli by Georgia A. Staton, Phoenix, and Hunt, Stanley, Hossler & Rourke, Ltd. by Douglas S. Stanley, Yuma, for defendants-appellees/cross appellants.

FELDMAN, Vice Chief Justice.

Plaintiff, Evangeline Wheeler, was hired as a probationary teacher by Yuma School District No. 1 (the "District"). Her contract was not renewed, *inter alia,* because of alleged "poor communication skills" with parents. We granted review to determine whether that charge was unrelated to classroom performance and therefore exempted the District from the requirement to give ninety days' preliminary notice pursuant to A.R.S. §§ 15–536(B) and 15–538(A). The second issue we consider is whether the teacher's hiring during the ninety-day period itself exempted the District from the notice requirement.

We granted review under Rule 23, Ariz. R.Civ.App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS

Evangeline Wheeler is a certified teacher with twenty-five years of teaching experience. The District operates Gila Vista Junior High School, where one of the regular mathematics teachers suffered a heart attack during the winter of 1983–84. To replace the ill teacher, the District hired a series of substitute teachers, including Wheeler. On January 30, 1984, following a full week of substituting, Wheeler was offered and accepted a contract for the balance of the 1983–84 school year.[1]

On February 27, 1984, John Boykin, Wheeler's principal, formally observed her classroom performance for the first time.

---

1. The trial court found that, pursuant to the contract, Wheeler was a probationary teacher.

Order of June 4, 1985, at 1–2. *See* A.R.S. § 15–501(A)(6) (1984).

On March 21, 1984 he gave her the Classroom Observation and Teacher Evaluation forms along with a letter alerting her that "several areas are in need of improvement relative to your performance in the classroom."[2] One day later, on March 22, 1984, the principal wrote to Dr. Thomas McCraley, the District's superintendent, to recommend that Wheeler not be offered a teaching contract for the following year. The "reasons are as follows," he wrote:

1. Poor communication skills in dealing with students and parents.
2. Lack of classroom organizational skills.
3. Lack of classroom control and the resulting disciplinary problems.

On March 29, 1984, the superintendent formally notified Wheeler that the principal's recommendation not to renew her contract would be presented to the District's governing board on April 12, 1984. On that date, in Wheeler's presence, the board voted to adopt the recommendation. The instant action followed.

Wheeler's complaint charged that the District failed to give her ninety days' preliminary notice of its decision not to renew her contract as required by A.R.S. §§ 15–536(B) and 15–538(A). Following the District's answer, both parties moved for summary judgment. In its order of June 4, 1985, the superior court found that, if the decision not to rehire was "based solely on [Wheeler's] claimed inadequate classroom performance," the District was required to give ninety days' notice and a chance to remedy the alleged deficiency. Of the various reasons given for the District's decision, the court found that "all relate to classroom performance with the possible exception of 'poor communication skills in dealing with ... parents.'" Because it

could not determine from the record whether this charge related to classroom performance, the superior court denied the motions for summary judgment. Taking their cue from the court, both parties then supplemented the record, Wheeler to show that communications with parents were an aspect of classroom performance, the District to show that they were not.[3] When the parties requested reconsideration of their respective motions for summary judgment, the court granted the defendant's motion, thus holding, in effect, that poor communication skills with parents were unrelated to classroom performance.

On Wheeler's appeal, the court of appeals held that "classroom performance" does not include communications with parents. *Wheeler v. Yuma School District No. 1*, 156 Ariz. 99, 101, 750 P.2d 857, 859 (App.1986). Following the rule of *Prichard v. Board of Education*, 146 Ariz. 233, 705 P.2d 473 (App.1985), the court accordingly concluded that preliminary notice of the District's intent not to rehire Wheeler was not required. At 101, 750 P.2d at 859. In concurring, Judge Kleinschmidt challenged as "mischievous" the *Prichard* rule that preliminary notice is not required where *any* of the reasons underlying the intent not to rehire is unrelated to classroom performance. *Id.* at 102, 750 P.2d at 860. However, because he believed that A.R.S. § 15–536(B)'s requirement for preliminary notice does not apply to teachers hired within the ninety-day notice period, he concurred in the result.

## DISCUSSION

### I.

The first issue we address is whether Wheeler's alleged "poor communication

---

**2.** Though the March 21 letter enumerated several of the areas in need of improvement, none had to do with communications with parents. The evaluation form itself rated Wheeler satisfactory in "work[ing] toward developing good relationships with parents."

**3.** Among the new "facts" presented by the District was the contention that its teacher evaluation form, a completed copy of which was presented to Wheeler on February 27, 1984, evaluates the teacher "in areas unrelated to

classroom performance." Among the items included on this form, in addition to "Works toward developing good relationships with parents," are "Is able to use a variety of materials and methods and suit them to the ... individual student," "Has adequate knowledge of the subject matter being taught," and "Prepares for the classes for which he/she is responsible." We find such evidence unpersuasive in establishing that parent-teacher communications are unrelated to classroom performance.

skills with parents" were unrelated to classroom performance so that the District was exempted from the requirement to give ninety days' preliminary notice of its intent not to reemploy her for that reason. The court of appeals construed the term "classroom performance" narrowly, holding that it relates "solely to what transpires within the classroom environment and encompasses the teacher's mastery of the subject and the teacher's ability to teach it." At 101, 750 P.2d at 859 (relying on *Cervantez v. Morenci Public Schools*, 124 Ariz. 484, 605 P.2d 462 (App.1979)). We disagree with this view.

At the times relevant to this action, the requirement for preliminary notice for nonrenewal was contained in A.R.S. §§ 15–536(B) and 15–538(A). The former provided:

> Notice of the board's intention not to reemploy a probationary teacher shall ... incorporate a statement of reasons for not reemploying the teacher. If the reasons are charges of inadequacy of classroom performance, the board ... shall, at least ninety days prior to such notice, give the teacher written preliminary notice of his inadequacy, specifying the nature of the inadequacy with such particularity as to furnish the teacher an opportunity to correct his inadequacies and overcome the grounds for such charge.

A.R.S. § 15–536(B) (1984). Almost identical language was contained in § 15–538(A), which dealt with both dismissal and non-renewal. The extent of the protections the legislature intended to confer through these statutes can be ascertained from considering the predecessor statutes and the history of their enactment.

The predecessor to § 15–536(B) was § 15–252(B). Until the passage of H.B. 2159, 33d Leg., 1st Sess. (1977), § 15–252(B) provided only that the "notice [of intent not to reemploy a probationary teacher] shall incorporate a statement of reasons for not reemploying the teacher." The statute contained absolutely no provision for preliminary notice to probationary teachers of the board's intention not to

reemploy them. Section 15–265(A), the predecessor to § 15–538(A), however, did require prior notice to both continuing and probationary teachers of a board's intention to *dismiss* them for incompetency:

> The governing board of any school district shall not formulate any charges of incompetency against a continuing or probationary teacher unless ... at least ninety days prior to the date of the notice [of intent to dismiss], the board ... has given the teacher written notice of incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the teacher an opportunity to correct his faults and overcome the grounds for such charge.

The protections of § 15–265(A), however, were strictly limited to teachers dismissed prior to the expiration of an existing contract. In *Board of Trustees v. Superior Court*, 25 Ariz.App. 47, 49, 540 P.2d 1266, 1268 (1975), they were held unavailable to teachers whose boards simply failed to renew their contracts.

Perhaps as a result of that decision, in 1977 the legislature greatly expanded the rights of teachers whose districts intended not to reemploy them. *See* Act of May 27, 1977, ch. 164, 1977 Ariz.Laws 1076. The relevant portions of the Act had their origins in S.B. 1084, 33d Leg., 1st Sess. (1977). In the Senate the bill was introduced as an act "prescribing prior notice to teacher of charges of incompetency before notice of intention not to reemploy." 1977 Senate Journal 89. It would have amended §§ 15–252 and 15–265 by adding one sentence to each. To the former it would have added, "If the reasons are charges of incompetency, the board shall be required to comply with section 15–265." To the latter it would have added, "For the purposes of this section, dismissal shall include failure to reemploy." Of the bill in this original form, the Legislative Council wrote:

> [It] would require that a probationary teacher who is being denied reemployment for reasons of incompetency be apprised of the specific charges of incompetency in the same manner provided in

existing law for dismissal of a continuing teacher for incompetency. The teacher would have to receive a written evaluation pertinent to the specific charges so that the teacher has particular instances of behavior to analyze and to attempt to correct.

Arizona Legislative Council, Summary Analysis of S.B. 1084, 33d Leg., 1st Sess. (Feb. 6, 1977).

Before its passage by the Senate, S.B. 1084 was amended to more clearly spell out these protections and to limit them to certain kinds of "incompetency." The Senate-passed amendment to A.R.S. § 15–252(B) would have substituted the term "inadequacy of classroom performance" for "incompetency" and explicitly provided that

[i]f the reasons [for not reemploying the probationary teacher] are charges of inadequacy of classroom performance, the board ... shall, at least ninety days prior to such notice, give the teacher written preliminary notice of his or her inadequacy, specifying the nature thereof with such particularity as to furnish the teacher an opportunity to correct his or her inadequacies and overcome the grounds for such charge.

S.B. 1084 also would have repealed § 15–265(A) and replaced it, in part, by similar language applicable to both dismissal and nonrenewal of continuing and probationary teachers.

These provisions of S.B. 1084 were eventually incorporated without any substantive changes into H.B. 2159, 33d Leg., 1st Sess. (1977). 1977 Senate Journal 1252. Following passage by both houses, the bill was signed into law on June 6, 1977. *Id.* at 1253. The nonrenewal and dismissal provisions pertaining to probationary teachers[4] survived intact in the versions of §§ 15–536(B) and 15–538(A) which were in effect at the time this action arose. *See* Act of Apr. 27, 1983, ch. 281, §§ 6, 9, 1983 Ariz. Laws 1054, 1056.

It is clear from this history that the legislature unequivocally intended to protect probationary teachers such as the plaintiff against nonrenewal by giving them the right to notice and a ninety-day opportunity to correct deficiencies—provided that the board's intention not to renew was based on reasons covered by the statute. To determine whether the District's nonrenewal notice was within the statute, we must therefore consider the difference between "incompetency," the original term used in the amending bill, and "inadequacy of classroom performance," the more narrow term actually adopted.

Caselaw clearly establishes the broad scope of conduct that can be characterized as "incompetent":

It is clear that a lack of that knowledge required to be taught to one's students would constitute incompetency, as would the inability of a teacher to impart such knowledge effectively to his students. But incompetency is not necessarily so confined, and may relate, and not uncommonly does, to other aspects of the teacher's performance of classroom duties, such as the maintenance of discipline....

The determination of a teacher's competency is not necessarily limited to a consideration of his performance of classroom duties. In fact, in some instances a finding of incompetency has been predicated upon the teacher's conduct during nonschool hours as to matters not directly pertaining to the function of teaching. With respect to school duties other than classroom duties, the improper performance of such duties may be held to show incompetency upon the part of the teacher.

Annotation, *What Constitutes "Incompetency" or "Inefficiency" As a Ground for Dismissal or Demotion of Public School Teachers,* 4 A.L.R.3d 1090 (1965). Thus, in *Horosko v. Mount Pleasant Township School District,* 335 Pa. 369, 6 A.2d 866, *cert. denied,* 308 U.S. 553, 60 S.Ct. 101, 84 L.Ed. 465 (1939), "incompetency" was held

---

4. The 1983 amendment to § 15–538(A) deleted continuing teachers from its coverage. The requirement that they be given preliminary notice of the board's intention to dismiss them for

inadequate classroom performance was at that time included in § 15–539(B). *See* Act of Apr. 27, 1983, ch. 281, § 11, 1983 Ariz.Laws 1057.

to encompass a teacher's activities, after school hours and during summer vacation, as a waitress and sometimes-bartender in her husband's beer garden. In *Board of Public Education v. Beilan*, 386 Pa. 82, 125 A.2d 327 (1956), *aff'd*, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958), *clarified in Board of Public Education School District v. Intille*, 401 Pa. 1, 163 A.2d 420 (1960), the term was held to encompass a teacher's refusal to answer his superintendent's questions concerning loyalty. And in *Tichenor v. Orleans Parish School Board*, 144 So.2d 603 (La.Ct.App.1962), the term was applied to a teacher's refusal to allow supervisory personnel to observe his conduct in the classroom.

▆ In limiting the notice requirement to inadequate classroom performance rather than to the broad range of incompetency, we presume that the legislature had a reasonable purpose.[5] Obviously, the geographical site of improper teacher performance cannot have been the touchstone for the statute's provision for ninety days' preliminary notice and opportunity to cure. Teachers whose instructional, disciplinary, or supervisory skills are deficient should be treated alike, whether their deficiency is first manifested in the classroom or on the playground. By the same token, it would be absurd to dispense with ninety days' notice to a teacher who habitually abuses or humiliates students on the street or playground, but to require such notice to the teacher who abuses or humiliates students in a classroom. Thus, we hold that "classroom performance," as used in §§ 15–536(B) and 15–538(A), does not define the place where the activity in question occurs, but instead includes those factors which pertain to teaching ability, technique, and effectiveness. It encompasses the broad scope of a teacher's professional activities that enhance or detract from the instructional process. Deficiencies in these areas are such that, once brought to a teacher's attention, they may often be remedied. They are precisely the kinds of deficiencies that would justify the legislative requirement for notice and opportunity to cure.

The court of appeals held that improper technique in communicating with parents was not related to classroom performance and that Wheeler therefore was not entitled to preliminary notice even though the other charges against her did relate to classroom performance. *See Prichard, supra* (holding that notice of intent not to reemploy is not required where any of the reasons given by the board is unrelated to classroom performance).

We believe, to the contrary, that communication with parents is an integral part of the educational process. When they communicate, parent and teacher can work together to reinforce the instructional program, encourage a student's special talents and interests, and address weaknesses. They can coordinate their individual efforts to foster the student's intellectual growth and emotional well-being.

Our consideration of the record information regarding the nature of a teacher's communication problems with parents further leads us to conclude that they are within the sphere of teaching or teaching-related activities and ordinarily are remediable. Communications with parents typically take place in the context of a parent-teacher conference. During 1983–84, four of Yuma School District's 175 "teaching days" were denominated "parent conference days." *See* Plaintiff's Petition for Special Action, Exhibit F–3 (1983–84 School Calendar). The third of these occurred on February 23, 1984, just four days before

---

5. In Arizona, the task of defining the terms "incompetency" and "inadequacy of classroom performance" was left to the courts. While no comprehensive definitions were formulated, *DeFries v. School District No. 13*, 116 Ariz. 83, 567 P.2d 1212 (App.1977), impliedly defined "incompetency" as including a lack of "academic competency or teaching ability." *Id.* at 87, 567 P.2d at 1216. *Cervantez, supra*, impliedly defined "inadequacy of classroom performance" identi-

cally. *Id.* 124 Ariz. at 486, 605 P.2d at 464 (citing *DeFries*). Neither case considered the distinctions between the terms nor the rationale for the legislative change. Conversely, the legislature could not have considered the court of appeals' tentative definitions in these cases, since both were decided after the legislative process to limit the preliminary notice requirement to charges of inadequate classroom performance was well underway.

Wheeler's principal observed her classroom performance and less than one month before he discussed her evaluation with her. Because the record shows that parent conferences are part of a teacher's regularly assigned school duties and because they are closely related to classroom teaching, they are subject to the same kinds of observation, supervision, and evaluation as are other teaching duties. As such, when weaknesses are observed, supervisor and teacher may work together to remedy them.

The caselaw of our sister states provides additional support for the view that communications with parents are an essential aspect of classroom performance.[6] In *Perez v. Commission on Professional Competence,* 149 Cal.App.3d 1167, 1170–71, 197 Cal.Rptr. 390, 393 (1983), the California statute requiring ninety days' written notice of a district's intention to dismiss a teacher was held applicable to a teacher whose deficiencies included failure to maintain appropriate relationships with parents. The California statute, like our own, was designed to enable the teacher to "correct his faults and overcome the grounds of the charged misconduct." *Id.* at 1171, 197 Cal. Rptr. at 393.

*Beebee v. Haslett Public Schools,* 66 Mich.App. 718, 239 N.W.2d 724 (1976), *rev'd on other grounds,* 406 Mich. 224, 278 N.W.2d 37 (1979), defined a teacher's fitness to teach, i.e., his "classroom performance and overall impact on his students," as a function, in part, of his rapport with parents. *Id.* at 726, 239 N.W.2d at 728–29 (quoting *Morrison v. State Board of Education,* 1 Cal.3d 214, 229–30, 461 P.2d 375, 386–87, 82 Cal.Rptr. 175, 186–87 (1969)). *Hamburg v. North Penn School District,* 86 Pa.Commw. 371, 484 A.2d 867 (1984), similarly found a teacher's continual failure

to "maintain poise and composure ... in dealings with ... parents" to be a deficiency having a "detrimental effect upon a teacher's effectiveness." *Id.* at 377–78, 484 A.2d at 870. *But see In re Board of Education v. Middle Island Teachers Association,* 68 A.D.2d 926, 414 N.Y.S.2d 372 (1979) (incompetence at a parent-teacher conference unrelated to classroom performance), *rev'd on other grounds,* 50 N.Y.2d 426, 407 N.E.2d 411, 429 N.Y.S.2d 564 (1980).

Accordingly, we hold that a teacher's poor communication skills with parents are one aspect of inadequate classroom performance rather than an indication of inherent unsuitability to teach. Where such a problem exists, therefore, the teacher is entitled to preliminary notice of the board's intention not to renew his or her contract and the ninety-day opportunity, which such notice provides, to correct the inadequacy. In addition, we agree that a rule dispensing with the notice requirement when *any* of the reasons for nonrenewal is unrelated to classroom performance is "mischievous" and fairly invites school boards "to salt their reasons for not re-hiring with factors, however trivial, that will circumvent the notice requirements of the statute." 156 Ariz. at 102, 750 P.2d at 860. (Kleinschmidt, J., specially concurring). Therefore, we further hold that preliminary notice of a board's intention not to reemploy a probationary teacher is required when the *primary* reason for nonrenewal is inadequacy of classroom performance. To the extent that *Cervantez, supra,* and *Prichard, supra,* hold to the contrary, they are disapproved.

## II.

The next issue we address is whether a teacher hired during the ninety-day notice

---

**6.** The only Arizona case dealing with parent-teacher relationships in the context of the requirement for preliminary notice is *DeFries, supra* n. 5. This case arose under A.R.S. § 15–253(B) (now § 15–539(B)), which until 1977 provided for the dismissal of continuing teachers for either unprofessional conduct or incompetency. The district had charged the teacher with "unprofessional conduct in her relations with parents." Nowhere did the opinion enumerate the concrete facts constituting the "unprofessional conduct." Rather, it accepted the charge at its face value and held that the teacher was therefore not entitled under A.R.S. § 15–265 to the preliminary notice due a teacher about to be dismissed for incompetency. Because of the opinion's dearth of concrete facts, it sheds no light on the proper classification of a teacher's communication problems with parents.

period is nevertheless entitled to preliminary notice under A.R.S. §§ 15–536(B) and 15–538(A). Because the District contracted with Wheeler on January 30, 1984, seventy-five days prior to the statutory deadline for final notice of a board's intention not to reemploy probationary teachers, the District contends that it was exempted from the notice requirement. Citing *Knoell Brothers Construction, Inc. v. State, Department of Revenue*, 132 Ariz. 169, 172, 644 P.2d 905, 908 (App.1982), it argues that the court must avoid a statutory interpretation that leads to an absurdity. Appellees' Answering Brief at 10–11. More aptly, it cites *State v. Sanchez*, 128 Ariz. 547, 548, 627 P.2d 698, 699 (App.1980), *vacated on other grounds*, 128 Ariz. 525, 627 P.2d 676 (1981), for the proposition that rules of statutory construction require a court to "examine the context, subject matter, effects, consequences and the spirit and reason of the law."

The ninety-day preliminary notice statutes are part of the Teachers' Tenure Act, now codified at A.R.S. §§ 15–501 to –550 (the "Act"). *See Bower v. Arizona State School for the Deaf and the Blind*, 146 Ariz. 168, 704 P.2d 809 (App.1984). The Act's "obvious purpose [is] to give protection to the teaching profession from arbitrary dismissals," and to this end it "should be given a liberal interpretation." *Board of Education v. Williams*, 1 Ariz.App. 389, 393, 403 P.2d 324, 328 (1965). Far from being a grant of power to school districts, the Act is instead "a limitation on [their power] to freely contract in connection with the employment of [their] teachers for the following school year." *Carlson v. School District No. 6*, 12 Ariz.App. 179, 182, 468 P.2d 944, 947 (1970); *accord Mish v. Tempe School District No. 3*, 125 Ariz. 258, 261, 609 P.2d 73, 76 (App.1980). We approve the views expressed in these cases. We believe the Act is legislative recognition that, compared to other professionals, teachers receive little in the way of material rewards and need the protection of job security.

The significance of the limitations imposed by §§ 15–536(B) and 15–538(A) was eloquently recognized by the trial court:

> The professional integrity of a teacher is classroom performance. To impugn it surely strikes at the very heart of a teacher's professional standing. It is reasonable to conclude that the stigma of not being rehired for poor classroom performance is far greater than that of not being rehired for tardiness, unkempt appearance, inability to co-operate with co-workers, etc. Surely the legislature was mindful of this when it gave the teacher at least ninety days within which to overcome the grounds for the charge of inadequate classroom performance.[7]

Order of June 4, 1985, at 4.

We believe the trial court's views are supported by the language of each of the cited statutes. Neither § 15–536 nor § 15–538 contains any language that would exempt the District from the statutory notice requirement simply because the probationary teacher is hired late in the year. The District argues that it is impossible to apply the statutory requirement to teachers hired after January 15 and that, therefore, this court should exempt such teachers from the benefits of the Act. It is equally possible to say that given the purposes of the Act, the absence of statutory language providing for such an exemption, and the lack of any authority on the subject, the objectives of the Act are better served by applying the statutory protections to late-hired teachers. We believe the latter result to be better policy and therefore a better interpretation of the statute.

As the trial court also noted, on January 30, 1984 the District had options other than to contract with Wheeler as a probationary teacher. Order of June 4, 1985, at 3. It might have continued to employ her, or hired another, as a substitute teacher. *See Neary v. Frantz*, 141 Ariz. 171, 175, 685

---

7. Considering the unequivocal legislative history of the 1977 amendments to the current §§ 15–536(B) and 15–538(A), we cannot agree with *Johnson v. Board of Education*, 101 Ariz. 268, 272, 419 P.2d 52, 56 (1966), that the purpose of the Teachers' Tenure Act is simply to give teachers sufficient notice if they are not to be rehired so that they can seek other suitable positions.

P.2d 1323, 1327 (App.1984) (recognizing substitute teaching as unrelated to the acquisition of tenure). It might have hired parttime teachers. *See* Op.Att'y Gen. No. I80–113 (June 24, 1980) (to be considered a probationary teacher one must be a full-time classroom teacher). Instead the District chose to offer Wheeler a probationary teacher's contract. By so doing, the District received both the benefit of continuity of instruction in the math classes Wheeler taught and relief from the burden of seeking another, or a long series of other, substitute teacher(s). The District's quid pro quo was that, under the provisions of §§ 15–536 and 15–538, Wheeler could not be fired for inadequate classroom performance during the balance of the year in which she was hired and had to be renewed as a probationary teacher for the following year. At that time, she could be dismissed so long as the District complied with §§ 15–536 and 15–538. Any other result would mean that the District could have the benefits of hiring a fulltime, regular probationary teacher on the one hand and the freedom to treat that teacher as a substitute on the other, dismissing her without cause, notice, or opportunity to remedy her alleged deficiencies. This is not expressly permitted by the language of the statutes, and we do not believe it was within the contemplation of the legislature. It certainly does not further the legislative scheme reflected by the Act.

As we observed in *School District No. 6 v. Barber*, 85 Ariz. 95, 96, 332 P.2d 496, 497 (1958), the notice provisions of the Teachers' Tenure Act "create a personal right which must be strictly followed." We hold that Wheeler was entitled to the ninety days' preliminary notice provided for by A.R.S. §§ 15–536(B) and 15–538(A).

## CONCLUSION

The opinion of the court of appeals is vacated, the trial court's order granting defendants' motion for summary judgment is vacated, and the case is remanded to the trial court for proceedings consistent with this opinion.

GORDON, C.J., and HOLOHAN, J., concur.

CAMERON and MOELLER, JJ., did not participate in the determination of this matter.