778 P.2d 1294

Linden ROBERTS, Plaintiff/Appellant,

v.

SANTA CRUZ VALLEY UNIFIED SCHOOL DISTRICT NO. 35; Santa Cruz Valley Unified School District No. 35 Board of Trustees; Arthur Dale Fox, Jr.; Merrill Austin; Mary Richardson; and Bonnie Miller, Defendants/Appellees.

No. 2 CA–CV 88–0267.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 16, 1989.

Review Denied Sept. 19, 1989.*

---

* Cameron, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr. and J. Michael Jimmerson, Tucson, for plaintiff/appellant.

DeConcini McDonald Brammer Yetwin & Lacy, P.C. by John R. McDonald, Tucson, for defendants/appellees.

OPINION

FERNANDEZ, Judge.

Appellant, a non-tenured teacher, was dismissed after the school board found six charges against him had been substantiated. On appeal, he contends that his dismissal was improper under the applicable statutes. We affirm.

Linden Roberts was a third grade teacher whose first year of employment with appellee Santa Cruz Valley Unified School District No. 35 was the 1986–87 school year. His contract was renewed for the 1987–88 school year. Subsequent to the renewal, allegations of misconduct were made against him and on May 26, 1987, the school board served upon him a written notice of intent to dismiss appellant effective in 30 days. Attached to the notice was a statement of charges which listed 28 specific "causes" for dismissal. Also attached to the notice were copies of A.R.S. §§ 15–539, 15–501, 15–538.01, 15–540 to 15–542, 15–544 to 15–547 and 15–549.

Appellant requested a hearing, which was held before the school board in July 1987. Both sides were represented by counsel. At the conclusion of the hearing, the board found that the facts as charged in causes 1, 4, 5, 8, 13 and 22 were substantiated and that each cause constituted unprofessional conduct sufficient to justify dismissal. The findings were as follows:

[Cause I:] During the 1986–87 school year, Mr. Roberts' students created a 'game' to be played by the third grade students under his care and control. Under the rules of this 'game', if a student fell, was tripped, laid down or otherwise was on the floor, the other students in the class were allowed to kick the student on the floor until he/she arose from the floor. Mr. Roberts allowed this activity to take place and it often was committed in Mr. Roberts' presence and in his view. This activity created a situation harmful to the physical, mental and educational well-being of the students.

\*   \*   \*   \*   \*   \*

[Cause IV:] During the 1986–87 school year, Mr. Roberts created a classroom

discipline system whereby students were allowed and encouraged to kick, hit or knock other students for alleged classroom misconduct such as not paying attention, being out of his/her seat, failing to properly perform assigned punishment, etc. This activity took place with the full knowledge and permission of Mr. Roberts and was often committed in Mr. Roberts' presence and in his view. Mr. Roberts allowed, did not halt and indeed encouraged the students to kick or hit one another for perceived violations of classroom rules. Mr. Roberts would direct students to hit or kick other students for rules violations. This activity created a situation harmful to the physical, mental and educational well-being of the students.

\*   \*   \*   \*   \*   \*

[Cause V:] During the 1986–87 school year, Mr. Roberts would discipline the students in his third grade class for a variety of activities including, but not limited to, not paying attention, being out of their chairs and not getting the proper score on spelling tests. One punishment given to the students for this type of behavior would be to require the student to stand in the corner with his/her nose in the corner and his/her hands behind the back. If the child did not stand in the corner properly, other students were allowed, encouraged or order[ed] by Mr. Roberts to kick or hit the student in the corner. This activity created a situation harmful to the physical, mental and educational well-being of the students.

\*   \*   \*   \*   \*   \*

[Cause VIII:] During the 1986–87 school year, Mr. Roberts would assign certain students in his class to serve as guards over the other students. These students were told to kick or hit other students if they did not stand in the corner properly. This activity created a situation harmful to the physical, mental and educational well-being of the students.

\*   \*   \*   \*   \*   \*

[Cause XIII:] During the 1986–87 school year, various students would request permission from Mr. Roberts to go to the restroom, indicating an urgent need to do so. On a number of occasions, Mr. Roberts denied the children the right to go to the restroom. As a consequence of his refusal, the children eventually were unable to control themselves and urinated in their clothing.

\*   \*   \*   \*   \*   \*

[Cause XXII:] During the 1986–87 school year on a number of occasions, Mr. Roberts would grab the shoulder of a student and apply pressure so as to cause the child pain. Mr. Roberts did not obtain written permission to grab the child. Mr. Roberts did not follow the only District approved form of corporal punishment. Mr. Roberts did not have an adult employee of the school present as a witness when the action took place. Mr. Roberts' actions were unreasonable and unappropriate [sic].

Appellant appealed his dismissal to the superior court. The court found that the board's findings were reasonable and not arbitrary and capricious. The court also found that violation of governing board policies is grounds for dismissal pursuant to A.R.S. § 15–539.

Appellant contends on appeal that the acts involved were violations of A.R.S. § 15–521(A), and he was thus subject to disciplinary action by the governing board pursuant to A.R.S. § 15–341(A)(25) only. As a result, he argues, he could not be dismissed for unprofessional conduct pursuant to A.R.S. § 15–539. Second, he contends that the conduct involved constituted "inadequate classroom performance" so that the board was required, pursuant to A.R.S. § 15–538, to provide him with notice of the inadequacies and to allow him a 90–day opportunity to correct them before he could be dismissed.

## DISMISSAL PURSUANT TO A.R.S. § 15–539

Appellant does not deny the conduct which the school board found he committed but contends that he cannot be dismissed

for such conduct. Appellant's argument is based upon the 1983 amendments to the statutes dealing with the board's duties and responsibilities with regard to disciplinary action against teachers. The portions of A.R.S. § 15–521 which appellant relies upon read as follows:

A. Every teacher shall:

\* \* \* \* \* \*

3. Enforce the course of study, the use of adopted textbooks and the rules and regulations prescribed for schools.

4. Hold pupils to strict account for disorderly conduct.

\* \* \* \* \* \*

11. Comply with all rules, regulations, and policies of the governing board that relate to the duties prescribed in this subsection.

B. A teacher who fails to comply with this section is guilty of unprofessional conduct, and is subject to disciplinary action by the governing board pursuant to § 15–341, subsection A, paragraph 25 and by the state board of education pursuant to § 15–203, subsection A, paragraph 27.

Subsection A(11) was added in 1983 and subsection B was amended. Prior to 1983, subsection B provided that a teacher who failed to comply with the section was to have his or her teaching certificate revoked.

A.R.S. § 15–341 sets out the general powers and duties of school district governing boards. Subsection A(25) reads as follows:

Prescribe and enforce rules for disciplinary action against a teacher who engages in conduct which is a violation of the rules, regulations or policies of the governing board *but which is not cause for dismissal of the teacher or for revocation of the certificate of the teacher.* Disciplinary action may include suspension without pay for a period of time not to exceed ten school days. *Disciplinary action shall not include suspension with pay or suspension without pay for a period of time longer than ten school days.* The rules shall include notice, hearing and appeal procedures for viola-

tions which are cause for disciplinary action. The governing board may designate a person or persons to act on behalf of the board on these matters.

(Emphasis added.)

Appellant correctly notes that with regard to four of the six charges that were sustained by the board, the statement of charges served upon him referred to violations of A.R.S. § 15–521(A)(4) as well as various board policies. As a result, appellant argues that, pursuant to § 15–521(B), he could only be suspended without pay for ten days. He contends in effect that a ten-day suspension without pay is the exclusive penalty for a violation of any part of § 15–521(A) as well as for a finding that a teacher is guilty of unprofessional conduct. We do not read that section so restrictively.

An examination of the statutes that were amended simultaneously in 1983 reveals much about the legislative intent behind the amendments. Section 15–521, which previously carried the penalty of mandatory revocation of the teacher's certificate, was changed to provide for a ten-day suspension without pay by the school board as well as appropriate disciplinary action by the state board of education with regard to the teaching certificate. A.R.S. § 15–203(A)(27). The change in penalties indicates an acknowledgment by the legislature that the previous penalty was too harsh and non-discretionary.

The fact, however, that a school board was accorded the power to impose a ten-day suspension without pay, a power it did not previously possess under that statute, is not an indication that that suspension is the only penalty the board may impose for such violations. In fact, the opposite is indicated by the accompanying change in A.R.S. § 15–539. Until 1983, that section provided for dismissal only of tenured teachers. In 1983, it was amended to read as follows:

A. Upon a written statement of charges formulated by the governing board, charging that there exists cause for the suspension without pay or dismissal of a probationary or continuing teacher of the district, the governing board shall, except as otherwise provided in

this article, give notice to the teacher of its intention to suspend him without pay or dismiss him at the expiration of thirty days from the date of the service of the notice.

1983 Ariz.Sess. Laws ch. 281, § 11. It is undisputed that the 30–day notice given to appellant referred to A.R.S. § 15–539 and made no mention of § 15–521.

Furthermore, A.R.S. § 15–539(D) provides in part as follows:

> Any written statement of charges alleging unprofessional conduct, conduct in violation of the rules, regulations or policies of the governing board or inadequacy of classroom performance shall specify instances of behavior and the acts or omissions constituting the charge so that the certificated teacher will be able to prepare a defense.

Neither that subsection nor any of the subsequent subsections which provide for a right to a hearing indicate in any way that the penalty for a finding of unprofessional conduct is limited to a ten-day suspension without pay. In addition, A.R.S. § 15–536, which governs the offer of a renewal contract to a non-tenured teacher, provides that the offer must be made by April 15 "unless such teacher has been dismissed pursuant to § 15–538, 15–539, 15–541 *or* 15–544." (Emphasis added.)

■ We conclude, therefore, that § 15–521(B) does not prescribe the exclusive penalty for a determination that a teacher is guilty of unprofessional conduct. In any event, we also note that two of the charges which were sustained against appellant make no mention of A.R.S. § 15–521(A). Under those charges, dismissal was clearly proper. *Welch v. Board of Education,* 136 Ariz. 552, 667 P.2d 746 (App.1983).

■ Because we find evidence to support the findings of unprofessional conduct, we affirm the dismissal. *Welch,* supra; *Fulton v. Dysart Unified School District No. 89,* 133 Ariz. 314, 651 P.2d 369 (App.1982).

## INADEQUACY OF CLASSROOM PERFORMANCE

Appellant next contends that because his misconduct constituted inadequate class-

room performance, he should have been given preliminary notice of that fact and a 90–day opportunity to correct the inadequacies pursuant to A.R.S. § 15–538. He also complains that the district has failed to define inadequacy of classroom performance as required by A.R.S. § 15–539(C). Section 15–538 provides, in pertinent part, as follows:

> A. The governing board of any school district shall give any certificated teacher who has not been employed by the school district for more than the major portion of three consecutive school years notice of intention to dismiss or not to reemploy if such intention is based on charges of inadequacy of classroom performance. The governing board, or its authorized representative, shall, at least ninety days prior to such notice, give the teacher written preliminary notice of his inadequacy, specifying the nature thereof with such particularity as to furnish the teacher an opportunity to correct his inadequacies and overcome the grounds for such charge.

The prior statute employed the term "incompetency" rather than "inadequacy of classroom performance." 1974 Ariz.Sess. Laws ch. 60, § 3. We determined, under the prior statute, that physical abuse of children constituted unprofessional conduct and not incompetency, thus precluding application of the statute. *Fike v. Catalina Foothills School District,* 121 Ariz. 285, 589 P.2d 1317 (App.1978).

In this case, the hearing before the school board focused on appellant's unprofessional conduct and conduct in violation of the district's rules and policies. Appellant was not charged with "inadequacy of classroom performance." It is undisputed that he was never given a 90–day notice pursuant to A.R.S. § 15–538(A).

In *Wheeler v. Yuma School District No. One,* 156 Ariz. 102, 750 P.2d 860 (1988), the supreme court addressed the issue of the meaning of "inadequacy of classroom performance." The court concluded that the phrase is a more restrictive term than "incompetency" and that "'classroom performance,' as used in §§ 15–536(B) and 15–

538(A), does not define the place where the activity in question occurs, but instead includes those factors which pertain to teaching ability, technique, and effectiveness. It encompasses the broad scope of a teacher's professional activities that enhance or detract from the instructional process." 156 Ariz. at 107, 750 P.2d at 865.

The call here is a close one because the misconduct in which appellant engaged occurred in the classroom during the regular course of the academic day. Appellant's defenses included denial that some of the activities occurred, a complaint about the school superintendent's attitude toward him, an acknowledgment that some of the activities did occur as a form of discipline or to obtain the children's attention, and a contention that, prior to the date of the notice of intent to dismiss, a majority of the children's parents had requested that he teach their children in the fourth grade. Appellant did not contend that his actions were related to his ability to teach or to his effectiveness as a teacher.

We also find it significant that the supreme court concluded that the term "incompetency" is a broader one than "inadequacy of classroom performance." *Wheeler,* supra. If physical abuse of children did not constitute incompetency under the prior statute, how then can it be encompassed by the narrower term of "inadequacy of classroom performance"? Because the misconduct which was sustained clearly constituted physical abuse of the children entrusted to appellant's care, we find the board's conclusion that he was guilty of unprofessional conduct to be a reasonable one. We conclude that the misconduct did not come under A.R.S. § 15–538.

Appellant's dismissal is affirmed.

LACAGNINA, C.J., and ROLL, P.J., concur.