NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PEORIA UNIFIED SCHOOL DISTRICT, a political subdivision of the state, *Petitioner*,

*v.*

THE HONORABLE CRANE MCCLENNEN, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, *Respondent Judge*,

TIMOTHY MCKEE, a single man, *Real Party in Interest*.

No. 1 CA-SA 13-0263
FILED 09-11-2014

Petition for Special Action from the Superior Court in Maricopa County
No. LC2011-000006
The Honorable Crane McClennen, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Lewis Roca Rothgerber, LLP, Phoenix
By Mary Ellen Simonson, Kimberly A. Demarchi

DeConcini McDonald Yetwin & Lacy, PC, Tucson
By Denise M. Bainton
*Co-Counsel for Petitioner*

Law Offices of William R. Hobson, Chandler
By William R. Hobson

Law Offices of Kevin Koelbel, PC, Chandler
By Kevin Koelbel, Kyle J. Shelton
*Co-Counsel for Real Party in Interest*

By Christopher P. Thomas, Phoenix
*Counsel for Arizona School Boards Association*

———————————————

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

———————————————

**C A T T A N I,** Judge:

¶1        Peoria Unified School District seeks special action review of the superior court's decision that the District's Governing Board improperly terminated Timothy McKee's employment after a student in McKee's physical education ("P.E.") class drowned. The Board acted after finding that McKee failed to exercise appropriate professional judgment when he allowed a student with limited swimming skills to be in a crowded pool during a free-swim period in which the student was not constantly observed. The District argues that the superior court failed to give the Board's decision the deference owed under Arizona Revised Statutes ("A.R.S.") §§ 41-783(F) and 15-543(B). The District further argues that the court erred by holding that the Board's findings were not supported by substantial evidence and that the Board incorrectly and arbitrarily applied the law. For reasons that follow, we accept special action jurisdiction and grant relief by reversing the superior court's decision and remanding with

instructions that the superior court enter judgment affirming McKee's dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        McKee taught an Advanced P.E. class at Ironwood High School during the 2009–10 school year.  The class included a swimming unit at the high school pool, with formal instruction, along with "free swim" time.  Students who were not proficient swimmers or who preferred a different activity were not required to participate in the swimming unit.

¶3        On May 12, 2010, a student with limited swimming skills told McKee that he wanted to participate in the swimming class even though he was not a good swimmer.  After the structured instruction concluded, McKee permitted the student to stay for the free swim portion of the class, but directed him to remain in the shallow end of the pool.  The student went in the pool, and while standing in the shallow end, asked McKee for a kickboard.  McKee left the pool area to look for a kickboard in a nearby storage room, briefly leaving the pool unsupervised.

¶4        While McKee was looking for a kickboard, a second teacher arrived at the pool area with his P.E. class.  McKee told the other teacher he was looking for a kickboard, but he did not mention there was a student in the pool with limited swimming skills.

¶5        After returning and telling the student he could not find a kickboard, McKee walked to a ramada area 11 to 13 feet from the edge of the pool and sat down in a chair next to the other teacher.  They talked while watching the pool area, but McKee did not tell the other teacher about the student with limited swimming abilities.  From his seated position, McKee was not able to see the bottom of the deep end of the pool or the bottom of the lane closest to him in the shallow end.

¶6        While McKee was seated, another student in the class noticed the student with limited swimming skills at the bottom of the pool in the deep end and called for help.  McKee and the other teacher provided medical attention, as did paramedics who were called to the scene.  The student was taken to the hospital, but died shortly thereafter.

¶7        The District's human resources director conducted an investigation of the drowning incident and determined that the District had cause to terminate McKee's employment, and District administrators thereafter prepared a Statement of Charges to initiate the statutory termination process under A.R.S. § 15-501 *et seq.*  McKee requested a

hearing, and a hearing officer appointed by the Board conducted a three-day evidentiary hearing beginning on October 4, 2010.

¶8        After considering the evidence presented, the hearing officer found that the student had drowned during a less-than two minute period after McKee told him he could not find a kickboard, walked from the shallow end and sat down next to the other teacher near the deep end of the pool.  The hearing officer recommended that the Board dismiss the Statement of Charges, concluding that the District had not sustained its burden of showing that McKee engaged in unprofessional conduct or that there was cause to support his dismissal.

¶9        The Board reviewed the hearing officer's recommendation and held a lengthy public meeting at which it heard argument from both the District Administration and McKee regarding whether to adopt, reject, or modify the hearing officer's recommendation.  Following the hearing, the Board concluded that McKee had failed to exercise appropriate professional judgment by allowing a student with limited swimming skills to be in a crowded pool outside McKee's view.  The Board thus rejected the hearing officer's recommendation and terminated McKee's employment.

¶10        McKee appealed the Board's ruling to the Maricopa County Superior Court, which reversed, finding that "the Board's actions were contrary to law, arbitrary and capricious, and an abuse of discretion."  The District seeks special action relief from that ruling.

## JURISDICTION

¶11        Special action jurisdiction is discretionary and is generally appropriate only when no equally plain, speedy and adequate remedy is available by appeal.  Ariz. R.P. Sec. Act. 1(a).  In *Anderson v. Valley Union High School*, 229 Ariz. 52, 59, ¶ 21, 270 P.3d 879, 886 (App. 2012), this Court held that, under A.R.S. § 15-543, there is no right to appeal beyond the superior court in a Teacher Tenure Act disciplinary action. The District thus lacks any remedy by appeal, and in the exercise of our discretion, we accept special action jurisdiction.

## DISCUSSION

¶12        The District argues that (1) the superior court acted in excess of its jurisdiction because McKee's appeal from the Board's decision was filed after the 30-day jurisdictional deadline, (2) the superior court erred by vacating a decision by the Board that was supported by substantial evidence, and (3) the superior court erred by finding that the Board violated

McKee's right to due process and otherwise treated him unfairly. We address each issue in turn.

## I.      McKee Timely Appealed the Board's Ruling.

**¶13**      The District asserts that McKee's appeal to the superior court was untimely and thus jurisdictionally barred, because it was filed 31 days after the Board's decision, rather than within 30 days, as required by A.R.S. § 15-543. But McKee filed his appeal within 30 days, albeit with an incorrect cover sheet. Although a court clerk rejected the filing, we conclude that the wrong cover sheet was a technical defect at most, and that the otherwise compliant complaint was thus constructively filed when initially delivered to the Clerk. *See Whittaker Corp. v. Estate of King*, 25 Ariz. App. 356, 357, 543 P.2d 477, 478 (1975) (holding that the plaintiff had constructively filed its complaint, even though a court clerk rejected it because of an incomplete caption); *Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, 532-34, ¶¶ 4, 10, 16, 115 P.3d 124, 126-28 (App. 2005) (finding that a technically deficient complaint satisfied the notice pleading requirement and was constructively filed, notwithstanding its rejection by the court clerk).[1]

## II.      The Board's Ruling Was Supported by Substantial Evidence.

**¶14**      Pursuant to A.R.S. § 15-539(D), a governing board may terminate a teacher's employment based on unprofessional conduct. Unprofessional conduct can include violations of statutes, rules, or objectives of the governing board. *Id.* It can also include teacher conduct that breaches the duties owed to students under the teacher's care. *See Roberts v. Santa Cruz Valley Unified Sch. Dist. No. 35*, 161 Ariz. 398, 778 P.2d 1294 (App. 1989); *see generally Rouse v. Scottsdale Unified Sch. Dist. No. 48*, 156 Ariz. 369, 752 P.2d 22 (App. 1987). Good cause for dismissal includes "a cause which bears a reasonable relationship to a teacher's unfitness to discharge the duties assigned or is in a reasonable sense detrimental to the students." *Bd. of Educ. of Tempe Union High Sch. Dist. v. Lammle*, 122 Ariz. 522, 526, 596 P.2d 48, 52 (App. 1979).

**¶15**      A.R.S. § 15-541(A) provides that a governing board may designate a hearing officer agreed to by the parties to conduct a hearing regarding proposed actions to dismiss or suspend a teacher. After

---

[1]      In light of our ruling that the complaint was constructively filed within the limitations period, we do not address McKee's alternative argument that the complaint was not due until 30 days from the date the Board adopted the written decision on which it now relies.

conducting a hearing, the hearing officer must make a written recommendation to the governing board that includes findings of fact and conclusions. *Id.* Parties to the hearing have the right to object to the findings of the hearing officer and present oral and written arguments to the governing board, which is ultimately responsible for accepting or rejecting the hearing officer's recommendation. *Id.*; A.R.S. § 15-541(B).

**¶16** Under A.R.S. § 15-543(B) and A.R.S. § 41-783(F), the superior court may review a governing board's decision to determine whether the decision was: (1) founded on or contained an error of law, including error of construction or application of any pertinent rules, (2) unsupported by any evidence as disclosed by the entire record, (3) materially affected by unlawful procedure, (4) based on a violation of any constitutional provision, or (5) arbitrary or capricious. This court reviews de novo a superior court's appellate decision. *See Ariz. Comm. Diving Servs., Inc. v. Applied Diving Servs., Inc.*, 212 Ariz. 208, 211, ¶ 7, 129 P.3d 497, 500 (App. 2006).

**¶17** In reviewing the board's decision regarding the basis for the termination, "the superior court . . . has a limited appellate role; it does not conduct a review 'de novo' as it once did in such matters." *Anderson*, 229 Ariz. at 56, ¶ 10, 270 P.3d at 883. Instead, the reviewing court's scope of review is "very limited," and the board's decision must be upheld "unless the decision sought to be reviewed lacks any reasonable evidence to support it." *Johns v. Ariz. Dep't of Econ. Sec.*, 169 Ariz. 75, 78, 817 P.2d 20, 23 (App. 1991). Thus, the superior court (and this Court on de novo review) should not substitute its judgment for the board's absent a clear abuse of discretion. *Id.* at 81, 817 P.2d at 26.

**¶18** Here, there was substantial evidence supporting the Board's findings. Several witnesses from the education field testified regarding the common sense notion that having a student with limited swimming skills in a P.E. class requires heightened vigilance, which supports the Board's conclusion that allowing the student to be in the pool without providing constant supervision constituted unprofessional conduct. Although McKee points to the hearing officer's conclusion that the student's drowning was a tragic event that happened too quickly to prevent, that conclusion was based on what could or could not have been done after the student was allowed to go in the water. In contrast, the Board focused on McKee's conduct in failing to prevent the dangerous situation in the first place. Although the hearing officer's conclusion was reasonable, the contrary position adopted by the Board was also reasonable. Accordingly, the Board's decision must be upheld. *See Welch v. Bd. of Educ. of Chandler Unified*

*Sch. Dist. No. 80*, 136 Ariz. 552, 555, 667 P.2d 746, 749 (App. 1983) ("Were we in the position of the school board, we might have decided to reinstate [the plaintiff].  However, this is not our role.").

**III.    McKee Did Not Establish that the Board Denied Him Due Process or Otherwise Treated Him Unfairly.**

**¶19**        McKee argues that (A) he was denied due process because (1) the Board was not an impartial tribunal, (2) the Statement of Charges did not provide adequate notice, and (3) the Board did not provide a written statement identifying the evidence upon which it relied or the reasons for its decisions.  McKee also argues that (B) the dismissal process violated A.R.S. §§ 15-539 and 15-541, and (C) he was held to a standard not recognized in Arizona, and he was subjected to disparate treatment.

**A.    Due Process**

**¶20**        The Teacher Tenure Act enumerates certain procedures to ensure that a termination hearing comports with the notice and opportunity to be heard required by principles of due process.  *See, e.g.,* A.R.S. § 15-539 (providing for notice to teacher, statement of charges specifying conduct charged and rules violated, and the right to a hearing); A.R.S. § 15-541 (detailing hearing process, including the right to counsel, an official record, and argument before the governing board).  In applying these statutory provisions, a governing board, acting as adjudicator in this context, is presumed to be fair, and the party challenging the action bears the burden to rebut this presumption.  *Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, 152, ¶ 11, 985 P.2d 633, 637 (App. 1999).

**¶21**        Case law summarizes the statutory and due process protections in teacher termination cases as requiring the following:

> 1. Adequate written notice of the specific grounds for termination.

> 2. Disclosure of the evidence supporting termination, including the names and nature of the testimony of adverse witnesses.

> 3. The opportunity to confront and cross-examine available adverse witnesses.

> 4. The opportunity to be heard in person and to present evidence.

5. The opportunity to be represented by counsel.

6. A fair-minded and impartial decision maker.

7. A written statement by the fact-finders as to the evidence relied upon and the reasons for the determination made.

*Deuel v. Ariz. State Sch. for the Deaf & Blind*, 165 Ariz. 524, 527, 799 P.2d 865, 868 (App. 1990) (citations omitted).

### 1.    Board Bias

¶22        McKee asserts that the Board was not impartial because the District Administration's "prosecuting" attorney was also the attorney for the Board.  But when McKee requested a hearing, separate counsel was retained to advise the Board, and the attorney in question was representing only the Administration during the disciplinary proceedings.

¶23        Although McKee notes that it would be improper for a prosecutor to represent a judge in a criminal case, then represent the prosecuting agency in the same case, the comparison is inapt.  Teacher disciplinary proceedings are the product of a statutory scheme, *see* A.R.S. §§ 15-539 to -542, that specifically contemplates entrusting both the investigative and adjudicative functions to a single entity—the school district, and this Court has rejected due process challenges to such a procedure notwithstanding the Board's resulting "dual" role.  *See Rouse*, 156 Ariz. at 374, 752 P.2d at 27 (finding that statutory scheme for teacher discipline does not result in a due process violation absent a showing of actual bias or partiality).

¶24        Based on *Rouse*, McKee's argument regarding the attorney's role in representing the Administration fails.  By retaining separate counsel to represent it in its adjudicative capacity, the Board maintained the appropriate separation from counsel representing the Administration, and counsel's continued representation of the Administration did not provide a basis for setting aside McKee's dismissal.

¶25        McKee also alleges that the attorney's representation of the Administration was improper and demonstrated Board bias because the attorney was simultaneously representing the District (including the Board)

in a whistleblower proceeding McKee initiated against the District.[2] Although there may be reasons for the Board to retain different counsel in these types of proceedings, such a procedure was not required here because McKee's whistleblower allegations were made against the District, which is a different entity than the Board acting in its adjudicative capacity.

¶26         McKee also asserts that the Board predetermined the case. He bases this assertion on the fact that during the District's defense to McKee's whistleblower action, counsel for the District stated that McKee "was already well aware that he was going to be terminated" at the time he filed his notice of claim on August 17, 2010. McKee posits that this statement showed that the decision to terminate his employment was made prior to the Board's meeting. But counsel's statement addressed McKee's motivation for filing the whistleblower action and was simply referring to the fact that McKee made his whistleblower allegations *after* district administrators began preparing the Statement of Charges. The preparation of a Statement of Charges is a necessary prerequisite to the process that leads to a hearing and does not establish that the Board has already made a decision.

¶27         McKee also argues bias based on the District's position against him in the whistleblower proceedings and on the District's pecuniary interest in the outcome of the termination case. But McKee initiated the whistleblower case against the District, and his decision to litigate against the District did not preclude the Board from acting on the Statement of Charges in the termination case. *See In re Ronwin*, 139 Ariz. 576, 586, 680 P.2d 107, 117 (1983) (holding that the fact that all Arizona Supreme Court judges had been sued by the petitioner in connection with his prior denial of admission to practice law did not require recusal in subsequent litigation seeking admission to the Arizona Bar). And McKee's assertion that the District would potentially be liable for his salary and attorneys' fees if the Board decided not to dismiss him does not overcome the presumption of impartiality because McKee's assertion is too speculative absent evidence as to the significance of the fees "in light of the entity's entire budget." *See Pavlik*, 195 Ariz. at 154, ¶¶ 22–24, 985 P.2d at 639; *see also id.* at 154–55, ¶¶ 25–26, 985 P.2d at 154–55 (recounting statutory safeguards to ensure a fair decision by the governing board).

---

[2]     McKee alleged that the District was not in compliance with an inter-governmental agreement and County Regulations requiring the District to provide lifeguards at its pool.

¶28        McKee alleges that the Board did not adopt relevant policies until after the hearing, and never identified a policy, statute or regulation he violated.  But even absent a specific policy, testimony at the hearing supported the Board's conclusion that a student with limited swimming skills requires heightened supervision, and that a teacher violates his duties as a professional by not adequately protecting the students in his class.

¶29        McKee also alleges that the Board did not review the entire record and relied on extra-record evidence.  Although McKee asserts that the Board was only given binders that contained documents "cherry-picked" by the Administration, there is no evidence that the entire record was not available to the Board.  Nor is there evidence that McKee was prevented from presenting information to the Board or from explaining the significance of information that may or may not have been in the binders. In any event, due process in this context requires a fair hearing, but does not necessarily require that each Board member personally review every item in the record.  *See Fulton v. Dysart Unified Sch. Dist. No. 89*, 133 Ariz. 314, 320–21, 651 P.2d 369, 375–76 (App. 1982) (rejecting assertion that "the Board's decision without personally reviewing the testimony heard by the commission violated [the plaintiff's] due process rights," and citing to *Morgan v. U.S.*, 298 U.S. 468, 481 (1936) (observing that although due process requires "a hearing in a substantial sense," "[e]vidence may be taken by an examiner" and "[e]vidence thus taken may be sifted and analyzed by competent subordinates.")).

¶30        McKee's extra-record allegation is based on the fact that one Board member independently visited the pool prior to the hearing.  While such extra-record investigation is generally improper, here there was no dispute regarding the physical characteristics of the pool and the surrounding area.  McKee did not dispute that he and the other teacher watching the pool could not see the bottom of the pool from where they were sitting, and thus, the Board member's observation of the pool and the pool area did not materially affect the Board's decision and does not provide a basis for relief.  *See* A.R.S. § 41-783(F) (specifying grounds for overturning an agency decision, including a showing that the decision was "[m]aterially affected by unlawful procedure").

¶31        Finally, McKee alleges that another Board member based her decision on matters outside the scope of the Statement of Charges because the Board member stated that she considered whether she would entrust McKee with the supervision of her own child.  The Board member's statement was not, however, improper or based on extra-record information; instead the statement simply applied one of the standards

10

considered by the Board—whether McKee's professional judgment regarding student safety was deficient.

## 2.    Adequacy of Statement of Charges

¶32        McKee argues that the Statement of Charges did not provide sufficient notice of the charges against him because the District relied on evidence beyond that included in or attached to the Statement of Charges. McKee further argues that the District failed to timely disclose witnesses and evidence by "dribbling out" its evidence until the day before the hearing.

¶33        Under A.R.S. § 15-539(D), a statement of charges must "specify instances of behavior and the acts or omissions constituting the charge so that the certificated teacher will be able to prepare a defense," and must detail "the facts relevant to each occasion of alleged unprofessional conduct." Here, the Statement of Charges set forth the circumstances underlying the student's drowning and stated facts that, if true, supported McKee's dismissal as a teacher. The Statement of Charges adequately advised McKee of the charges against him and led to a hearing at which the Administration was required to prove up the asserted facts with evidence.

¶34        McKee's complaints regarding disclosure of witnesses and evidence is similarly unavailing. His argument focuses primarily on his assertion that, in complying with a request for information, District administrators withheld portions of the human resources investigator's interview notes. McKee sought the District's investigative file through a public records request filed August 24, 2010 (four days after the Board adopted the Statement of Charges). On September 16, 2010 (after McKee had filed a public records lawsuit), the Administration produced notes for 9 of the 14 interviews. On October 1 and 2, the Administration provided notes from two other interviews, and on October 3, provided notes from the final three interviews. McKee's hearing began on Monday, October 4.

¶35        The Administration's disclosure satisfied the District's due process obligation to disclose the "names and nature of the testimony of adverse witnesses." *See Deuel*, 165 Ariz. at 527, 799 P.2d at 868. The Administration's witness and exhibit list, filed October 1, included three witnesses to the drowning (McKee, the other teacher at the pool on the day of the drowning, and a student who was also present) whose fairly substantial interviews in the police investigation were included as attachments to the Statement of Charges. Additionally, the

Administration's exhibit list, disclosed on October 2, included a portion of the human resources investigator's notes.

**¶36**        Even assuming McKee did not obtain documents from the District when he wanted them or within deadlines required for disclosure under a public records request, he has not established a due process violation warranting setting aside the Board's ruling.  McKee had notice of the charges and the evidence against him, and he was able to successfully present his case to the hearing officer—who recommended against terminating McKee's employment.  Although the Board rejected the hearing officer's recommendation, it did not do so based on facts of which McKee was unaware.  Instead the Board's decision was based on its view that the assessment of McKee's professionalism turned not on what happened after the student started to drown, but rather on McKee's decision to allow the student to be in the pool without heightened supervision.  Thus, McKee has not established that the alleged due process violations affected the Board's decision.  *See* A.R.S. § 41-783(F).

### 3.        Adequacy of Board's Findings

**¶37**        McKee asserts that the Board failed to provide or serve "a written statement by the fact-finders as to the evidence relied upon and the reasons for the determination made."  *See Deuel*, 165 Ariz. at 527, 799 P.2d at 868. But the Board provided a detailed chart articulating its findings of fact and conclusions of law, with citations to the record for each finding of fact and conclusion of law.

**¶38**        The Board was not required to provide a written, signed judgment.  A.R.S. § 15-543(B) does not require any particular type of ruling, and instead provides only that "[t]he decision of the governing board may be reviewed by the court in the same manner as the decision made in accordance with § 41-785."   Here, the Board's decision, which was announced in a public meeting and subsequently confirmed in writing, was adequate to provide a basis for judicial review under § 41-785.

### B.        McKee's Dismissal Did Not Violate A.R.S. § 15-539 or § 15-541

**¶39**        McKee argues that under A.R.S. § 15-539(C), he was entitled to preliminary notice of "inadequate classroom performance" and an opportunity to correct the performance.  But the Teacher Tenure Act acknowledges that not all teacher conduct, even inside a classroom, constitutes inadequate classroom performance, since the statute "specifically designates 'unprofessional conduct' as an alternative to

'incompetency' as a basis for dismissal." *DeFries v. Sch. Dist. No. 13 of Cochise Cnty.*, 116 Ariz. 83, 86–87, 567 P.2d 1212, 1215–16 (App. 1977); *see also* A.R.S. § 15-539(D). Here, the Board's decision was based on McKee's failure to conform to standards of professional conduct, rather than on inadequate classroom performance of the type a teacher should be given an opportunity to cure. *See Wheeler v. Yuma Sch. Dist. No. 1*, 156 Ariz. 102, 107, 750 P.2d 860, 867 (1988).

¶40　　McKee also argues that the District failed to attach copies of relevant statutes to the Statement of Charges, as required by A.R.S. § 15-539(F). But McKee does not suggest that he and his counsel were unaware of the relevant statutes, and his counsel in fact cited the substance of the relevant statutes throughout the proceedings. Thus, the failure to attach copies of relevant statutes to the Statement of Charges had no bearing on the Board's ruling.

¶41　　McKee further argues that he was not properly "served" with the Statement of Charges because it was not served by a process server or by registered or certified mail. But McKee does not dispute that a District administrator personally gave him and his attorney copies of the Statement of Charges. And he does not assert any prejudice resulting from the method of service or from his related claim regarding the timing of the hearing. Thus, he is not entitled to relief. *See* A.R.S. § 41-783(F).

### C.　McKee Was Not Held To a Standard Unrecognized in Arizona and He Was Not Subjected to Disparate Treatment

¶42　　McKee argues that he supervised the pool in the same manner as every other P.E. teacher in the district, including the teacher who was with him at the pool and who was responsible for watching the deep end at the time the student drowned. The Board's decision was based, however, on McKee's decision to allow a student with limited swimming skills to go in the water without heightened supervision. No other teacher was demonstrated to have knowingly allowed a limited-skills swimmer in the pool without providing a heightened level of supervision. Thus, McKee did not establish that he was subjected to disparate treatment.

### CONCLUSION

¶43　　Although there are facts in the record that support the hearing officer's recommendation not to terminate McKee's employment, there are also facts supporting the Board's decision to reject that recommendation. In light of the Board's statutory responsibility to make these types of determinations, the superior court should have deferred to the Board's

decision. Accordingly, we accept special action jurisdiction and grant relief by reversing the superior court's decision and remanding with instructions that the superior court enter judgment affirming McKee's dismissal.



Ruth A. Willingham · Clerk of the Court
FILED: gsh