667 P.2d 746

**Ronald J. WELCH, a married man, Plaintiff-Appellee,**

v.

**BOARD OF EDUCATION OF CHANDLER UNIFIED SCHOOL DISTRICT NO. 80 OF MARICOPA COUNTY, Defendant-Appellant.**

No. 1 CA–CIV 6506.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 25, 1983.

Rehearing Denied Mar. 15, 1983.

Review Denied Apr. 5, 1983.

Bendheim, Mote & Monson, P.C. by Theodore D. Mote, Phoenix, for plaintiff-appellee.

DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. by John R. McDonald, Tucson, for defendant-appellant.

OPINION

GREER, Judge.

This appeal by the Board of Education (Board) is from a judgment reinstating appellee Ronald J. Welch as a teacher following a judicial review of his dismissal by the Board. The trial court held that the Board abused its discretion because there was no

reasonable evidence that good cause existed for his dismissal. We reverse.

In the fall of 1980, Mr. Welch and Cindy Vardon, a seventeen year old Chandler High School student, developed a private, personal relationship, which eventually led to marriage. Ms. Vardon's parents were divorced. Her mother, with whom she lived, was aware of the relationship and gave her approval. School officials were first apprised of the situation when Ms. Vardon's father telephoned from Florida. He spoke with the school principal, and advised him of his concern that his daughter was dating Mr. Welch, spending considerable time at Mr. Welch's home, and possibly sexually involved with Mr. Welch.

In response to questioning by school officials on October 29, 1980, Mr. Welch specifically denied any personal involvement with Ms. Vardon. On October 30, 1980, school officials expressly directed Mr. Welch not to "maintain a social relationship with students which could be construed as an improper teacher/pupil relationship." Ms. Vardon withdrew from Chandler High School on November 7, 1980, and transferred to a different school district. The following day Mr. Welch and Ms. Vardon were married. On November 20, 1980, the school board suspended Mr. Welch because of his relationship with Ms. Vardon and his refusal to cooperate with the Board's investigation into the relationship.

On January 13, 1981, the Board filed eight charges of unprofessional conduct against Mr. Welch. Mr. Welch requested and was granted a hearing before a commission, appointed pursuant to A.R.S. § 15–541 (then A.R.S. § 15–262).[1] Two of the charges were dismissed by the commission on May 1, 1981. After hearing evidence, the commission indicated that charges one through five did not appear to warrant consideration and suggested that attorneys for both sides submit written memoranda on the remaining three charges. Counsel

for both Mr. Welch and the district agreed. Charges six, seven and eight stated:

6. In the spring and fall of 1980, Mr. Welch conducted an improper "dating" and "courtship" relationship with one of his students, Cindy Varden [sic].

7. On October 29, 1980, when officials of the District were investigating a complaint made by the father of student Cindy Varden [sic], Mr. Welch lied to the officials concerning his relationship with Ms. Varden [sic].

8. On October 30, 1980, Mr. Welch was ordered not to maintain a dating relationship with students and agreed to comply with that directive. Mr. Welch had no intention of complying with that directive and violated it repeatedly until November 6, 1980.

The commission found that a "special relationship" between Ms. Vardon and Mr. Welch had developed by the fall of 1980, at which time Ms. Vardon was not a student in Mr. Welch's classes. However, it concluded that because the relationship was carried on in a discreet manner with the knowledge of Ms. Vardon's custodial parent, was not exploitive in nature, and was not a disruptive influence in the school, such conduct did not demonstrate unfitness to teach.

The commission further found that Mr. Welch lied to school officials on October 29, 1980, regarding his relationship with Ms. Vardon. However, it concluded that Mr. Welch had been placed in an untenable position with questions directed to an intimate personal matter. It found that his refusal to disclose his relationship with Ms. Vardon was not indicative of any pattern of untrustworthiness and did not demonstrate unfitness to teach.

With respect to charge number eight, the commission concluded that Mr. Welch must have maintained a relationship with Ms.

1. A.R.S. § 15–541 provides for a hearing upon the request of a teacher before a three member commission. One member of the commission is selected by the teacher, one member by the governing board and the third member is selected by the other two members. The commission is authorized to make findings of fact, a determination of issues and a recommendation with respect to dismissal.

Vardon after October 30, 1980, since he married her shortly thereafter. However, the commission was of the opinion that it was unreasonable to expect Mr. Welch to comply with a directive to refrain from associating with the person he intended to marry. The commission held that this behavior was likewise not indicative of unfitness to teach.

The School Board adopted the commission's findings of fact but rejected its recommendation to reinstate Mr. Welch. On August 7, 1981, by a vote of three to two, the Board dismissed Mr. Welch based upon all three charges of misconduct.

Mr. Welch appealed his dismissal to the Maricopa County Superior Court. The trial court reversed the Board's decision and ordered Mr. Welch reinstated effective April 1, 1982. The Board timely appealed on the grounds that the trial court erred by improperly substituting its judgment for that of the Board and by awarding attorney's fees to Mr. Welch for the appeal to superior court. For the following reasons, we reverse the judgment of the trial court.

School board decisions with respect to teacher dismissals are subject to limited review by the superior court. A.R.S. § 15–543 provides for a review in the same manner as decisions made in accordance with A.R.S. § 41–785.[2] A.R.S. § 41–785(F) provides in relevant part:

The court shall review the hearing on the basis of the transcript and exhibits, except that in case of alleged irregularity and procedure by the ... board not shown by the transcript, the court may order further testimony. The court shall upon request by either party hear oral arguments and receive written briefs. The court may affirm the order of the ... board, remand the matter for further proceedings before the board, or reverse or modify the order.

The scope of this review has been further delineated by this court in *Board of Education of Tempe Union High School District v.*

*Lammle,* 122 Ariz. 522, 526, 596 P.2d 48, 52 (App.1979):

[T]he superior court may not substitute its determination of good cause for that of the board and is limited to a determination of whether reasonable evidence supports the board's finding, and if so, whether the determination that good cause exists is arbitrary, capricious or an abuse of discretion.

At this juncture it is important to define "good cause." In the context of the dismissal of a continuing teacher, it means a cause which bears a reasonable relationship to a teacher's unfitness to discharge the duties assigned or is in a reasonable sense detrimental to the students being taught. [citations omitted].

In the case at bar, the trial court found that the Board had abused its discretion because there was "no reasonable evidence" supporting its conclusion that "good cause" existed to dismiss Mr. Welch.

Both parties agree there is substantial evidence to support the findings of fact made by the commission and adopted by the Board. The parties also agree that the Board was free to accept the commission's finding of fact but reject its recommendation to reinstate Mr. Welch. *See Fulton v. Dysart Unified School Dist. No. 89,* 133 Ariz. 314, 651 P.2d 369 (1982). *See also Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668 (1978); *Petrino v. Board of Education,* 179 Conn. 428, 426 A.2d 795 (1980). The parties disagree on whether the factual findings bear a reasonable relationship to Mr. Welch's "unfitness to teach" or constitute behavior that was detrimental to district students. In addressing this issue we must determine whether the board was required to base its decision upon evidence demonstrating *actual* "unfitness" or "detrimental effects" or whether "unfitness" or "detrimental effects" may be inferred from the conduct itself.

We agree with appellee that the record is devoid of any direct evidence that he was unfit to teach or that district students were

---

**2.** A.R.S. § 41–785 governs appeals to the superior court from personnel board hearings and prescribes the scope of review of personnel board decisions by the court.

adversely affected by his conduct. In fact, the record shows that official school evaluations of Mr. Welch's classroom teaching reflect that he was more than satisfactory in performing his teaching duties. Moreover, there is no evidence that Mr. Welch had used his authority as a teacher to coerce Ms. Vardon nor that their relationship was disruptive of school activities.

Mr. Welch has cited a line of cases commencing with *Morrison v. State Board of Education,* 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969), requiring evidence of specific findings of specific harm to students or other individuals in the school to prove good cause for dismissal. *See also Board of Education v. Jack M.,* 19 Cal.3d 691, 139 Cal.Rptr. 700, 566 P.2d 602 (1977); *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974); *Hoagland v. Mount Vernon School District,* 23 Wash.App. 650, 597 P.2d 1376 (1979). However, the Board has pointed out that none of these cases involve a teacher's conduct with students. The Board concedes that where conduct occurs off campus and does not involve other members of the school community, a special showing of harm to the school district would be required as a ground for dismissal. However, the Board argues that the complained of behavior was a result of Mr. Welch's on campus acquaintance with Ms. Vardon, and that Mr. Welch's failure to disclose his relationship with Ms. Vardon and his continued relationship with her in direct contravention of a school district directive was in itself insubordination.

We are unwilling to hold that a school board must demonstrate with particularity the adverse effects of a teacher's conduct upon his students, his teaching performance or the orderly running of the school as a prerequisite for dismissal in all circumstances. There may be conduct which by itself gives rise to reasonable inferences of unfitness to teach or from which an adverse impact on students can reasonably be assumed. Further, we are concerned that by imposing an absolute requirement that specific harm must be proven prior to dismissal, we would deter school administrators from acting to prevent or control predictable future harm. Whether conduct is such that a showing of actual harm is necessary is an issue that can best be addressed on a case by case basis. We therefore turn to the facts of this appeal to decide whether the Board was required to prove that Mr. Welch's conduct had detrimental effects on the school community.

We find this to be an extremely close case. Were we in the position of the school board, we might have decided to reinstate Mr. Welch. However, this is not our role. Our task is to determine whether the decision of the Board was reasonable, "bearing in mind that such a standard may permit a difference of opinion on the same subject." *Board of Education of Tempe Union High School District v. Lammle,* 122 Ariz. at 526, 596 P.2d at 52. Given this standard of review, we cannot say it was unreasonable for the board to conclude that Mr. Welch's conduct of refusing to cooperate with school officials in an investigation, and lying to them, constituted insubordination.

Our supreme court defined insubordination in *School District No. 8, Pinal County v. Superior Court of Pinal County,* 102 Ariz. 478, 480, 433 P.2d 28, 30 (1967):

> Insubordination imports a willful disregard of express or implied directions of the employer and a refusal to obey reasonable orders ... [citation omitted] and lack of cooperation is characteristically a subtle species of insubordination. Both terms are descriptive of the class of censurable practices disruptive of the efficiency of the employer's organization.

On October 29, 1980, the school district was involved in an investigation of charges instituted by a student's parent, alleging misconduct by a teacher. While the questions asked Mr. Welch related to his personal life, they also related to his role as teacher. The school had a legitimate interest in determining whether one of its teachers was involved in improper, and illegal conduct for which the school might ultimately be

held liable.[3] Thus, we believe the school district's demand that Mr. Welch honestly respond to its questions was not unreasonable. Mr. Welch must certainly have realized that this relationship with a student might raise concern by school officials if and when it was discovered. His refusal to reveal his relationship is understandable under the circumstances. However, it does not erase the fact that he lied to school officials investigating an official school inquiry instituted by a concerned parent. After considering this matter at great length, it is our opinion that Mr. Welch's failure to cooperate could reasonably be construed by the Board as insubordination. We conclude that insubordination without proof of specific adverse effects on the district, may be considered good cause for dismissal.

Because the Board rested its decision to dismiss Mr. Welch on any of the three charges, it is unnecessary to address the two additional reasons given for dismissal. Thus, we do not decide whether Mr. Welch's courtship with and subsequent marriage to a student can be deemed detrimental to the school community without proof of specific harm.

Having decided the Board could reasonably conclude that Mr. Welch's failure to cooperate in their investigation was good cause for dismissal, we hold that the Board's actions were neither arbitrary, capricious nor an abuse of discretion. Accordingly, the judgment of the trial court is reversed with directions to enter judgment in favor of the Board.[4]

FROEB, P.J., and GRANT, J., concur.

---

3. Ms. Vardon's father alleged sexual misconduct, a charge not proven nor alleged in the official charges brought by the Board. However, the school had a legitimate interest in determining whether the charge was true, because it might constitute criminal conduct. *See* A.R.S. § 13–1405.

4. Our disposition of this matter makes it unnecessary for us to reach the issue of attorney's fees raised by the Board.