**Susan FREDRICKSON, Appellant,**

v.

**DENVER PUBLIC SCHOOL DISTRICT NO. 1, Appellee.**

**No. 90CA421.**

Colorado Court of Appeals, Div. II.

May 23, 1991.

Rehearing Denied June 20, 1991.

Certiorari Denied Oct. 28, 1991.

Law Offices of George C. Price, George C. Price, Denver, for appellant.

Semple & Jackson, P.C., Martin Semple, Franklin A. Nachman, Dwight L. Pringle, Denver, for appellee.

Opinion by Judge JONES.

Susan Fredrickson appeals from an order of the Board of Education of the Denver Public Schools (Board) terminating her employment as a tenured teacher with Denver Public School District No. 1 (District). We reverse and remand with instructions that Fredrickson be reinstated.

On April 18, 1989, the Board, pursuant to § 22–63–117(2), C.R.S. (1988 Repl.Vol. 9), accepted for review charges of dismissal of Fredrickson. Fredrickson elected a hearing on the charges pursuant to § 22–63–117(5), C.R.S. (1988 Repl.Vol. 9).

After the hearing, the Administrative Law Judge (ALJ) issued his Finding of Fact and Recommendation. The ALJ concluded that the District had proven the statutory charges of "insubordination," "neglect of duty," and "other good and just

cause" for dismissal, and recommended Fredrickson's dismissal.

The Board considered the ALJ's report and remanded the case to the ALJ for further findings of fact with respect to issues of remediation.

Pursuant to the Board's remand, the ALJ conducted another hearing and then issued additional findings in which he cited a number of remedial efforts instituted by the District prior to Fredrickson's dismissal. The ALJ then, once again, recommended that Fredrickson be dismissed.

On January 18, 1990, the Board adopted the ALJ's findings and his recommendation of dismissal.

The following relevant evidentiary facts were established by the ALJ:

"During the 1988–89 school year Fredrickson was employed by the District at Kepner Middle school. Fredrickson has been employed as a substitute or a full-time teacher by the District since September, 1967.

"On January 4, 1989, Fredrickson had student A.M. in her class. A.M. was repeatedly out of his seat and did not take his seat until he had been warned several times. When he did sit down, Fredrickson placed her hand over his forearm on his desk and told him to stay seated. Fredrickson utilized light pressure in putting her hand over A.M.'s forearm.

"The evidence did not establish that Fredrickson hit A.M., as claimed by A.M.'s parent. Nevertheless, the matter was reported to Marjorie Tepper, Kepner's principal, and Tepper told Fredrickson at that time that *under no circumstances should Fredrickson ever use physical measures to discipline a student.*

"On January 14, 1989, Fredrickson was on lunch duty and noticed student F.S. seated in the lunchroom when he should have been elsewhere. F.S. routinely attempted to sneak into the building when he should have been outside. Fredrickson put her hands on his shoulders while F.S. sat in the lunchroom, shook him and

commented about his presence in the building.

"It was reported to Tepper by F.S.'s parent that Fredrickson had shaken F.S. violently. However, based upon the evidence presented at the hearing, the Administrative Law Judge finds that Fredrickson shook F.S.'s shoulders slightly.

.        .        .        .        .

"As a result of the incidents involving F.S. and A.M., on January 18, 1989, Tepper gave Fredrickson a letter of reprimand. In that letter, Tepper stated that allegations had been made against Fredrickson 'regarding the inappropriate manner in which you physically handled children for disciplinary reasons'. The letter of reprimand concluded that '*physically disciplining a child is behavior that is unacceptable and must cease.*'

"At the time the written reprimand was provided to Fredrickson, Tepper discussed with Fredrickson the alternatives to responding to disciplinary situations with physical force. It was discussed with Fredrickson, and Fredrickson was aware, that among various alternatives she could call the office for assistance (using an intercom in the classroom), call a counselor, obtain the assistance of another teacher or student advisor, send students out of the room, send students to the disciplinary room in the building, or that Fredrickson herself could leave the room. These alternatives to physical force are aspects of good classroom management and good instruction.

"On February 7, 1989, Fredrickson had students A.B. and G.M. in her class. Fredrickson noticed these two students writing notes and attempted to take a note out of A.B.'s hand. A.B. attempted to avoid having the note taken by pushing or slapping Fredrickson's hand away on two or three occasions, but Fredrickson was able to take the note from her.

"After taking the note from A.B., Fredrickson walked down the aisle between two rows of desks, heading toward the back of the room. At this time G.M. lightly struck or slapped Fredrickson in the back.

"Upon being struck, Fredrickson turned around and saw A.B. standing in the aisle with her hands held in the air in a non-threatening fashion, as if to deny having struck Fredrickson. Thinking that A.B. was the one who had struck her, Fredrickson hit A.B. on the shoulder with an open hand: this contact was light, in the nature of a tap, push or shove.

"Upon being struck, A.B. took a step back and asked why Fredrickson had hit her. Fredrickson stated that she had hit A.B. because A.B. had hit Fredrickson. A.B. informed Fredrickson that she had been struck by G.M., at which point Fredrickson turned and gave G.M. a tap with her hand.

"Fredrickson admits that she was not concerned with her physical safety at the time that she made contact with G.M. Additionally, Fredrickson did not fear that A.B. would take any action against her. In fact, neither A.B. nor G.M. threatened any further physical contact with Fredrickson, they did not advance toward Fredrickson, and Fredrickson could have safely walked away from the incident without striking either student. By her own admission, Fredrickson struck these students because of her belief that it was necessary to show the students that they could not get away with hitting a teacher. In making physical contact with these students, Fredrickson states that she was reacting to the fact that she had been struck by someone.

"After the above incident occurred, A.B. and G.M. left the room, without permission, and reported the incident to Tepper. Approximately 10 minutes later, Fredrickson was called into Tepper's office and was told, for her own protection, to write a statement about the incident, which she did. Neither in this statement nor in any discussion with Tepper did Fredrickson state that she believed herself or any other person to be in physical danger from A.B. or G.M.

.     .     .     .     .

"The physical contact with A.B. and G.M. was not of a serious nature. Neither student was injured in any fashion and immediately after the incident they were observed to be laughing about the matter. Neither student was upset by this incident...." (emphasis added)

Fredrickson contends that the evidentiary facts, as established by the ALJ, do not support the Board's ultimate findings of insubordination, neglect of duty, or other good and just cause for dismissal. We agree.

■ Although a school board's findings of ultimate fact must be sustained if warranted in the record, the record, for purposes of judicial review of those findings, consists *solely* of the formal findings of basic or evidentiary fact made by the panel or administrative law judge. *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981). Thus, to be sustained on review, the board's ultimate findings must be fully warranted by the hearing officer's findings of evidentiary fact. *Blaine v. Moffat County School District RE No. 1*, 748 P.2d 1280 (Colo.1988).

From our review of the record, it is apparent that each of the three stated bases for Fredrickson's dismissal—insubordination, neglect of duty, and other good and just cause—are premised upon her failure to comply with the January 18, 1989, letter of reprimand which flatly and unequivocally prohibited the use of physical discipline. However, we see no valid reason why Fredrickson should be punished for failing to follow a directive which circumscribes her rights and duties as provided under the District's own written policies, especially when her response was reasonable and prudent.

The District has set forth certain limited circumstances under which a teacher or principal may use physical force against a student. One such circumstance is set forth in District Policy 1214(VI)(C)(1) which provides as follows:

"Principals and teachers are responsible for the maintenance of order within the classroom and the school. Authority to use reasonable and prudent force and restraint *for the purposes of maintain-*

*ing order ... is delegated by the Board of Education to certificated personnel."* (emphasis added)

Furthermore, District Policy 1214(VI)(B)(4) provides that, when engaged in their duties and responsibilities, "teachers may use reasonable force as is necessary to protect themselves from an assault [and by implication a battery]...." Moreover, certain conduct by students, such as "fighting, assault [and by implication battery], [and] menacing" are "expressly forbidden and ... subject [a] student to disciplinary action" under District Policy 1214(VII)(A)(4).

Each of the student behaviors referred to above reflects at the very least, a breakdown in, breach of, or serious threat to, a state of order in the classroom or school and, therefore, *requires* conduct by a teacher in furtherance of the maintenance of order.

The issue before us is whether the circumstances encountered by Fredrickson amounted to a situation requiring the maintenance of order.

■ We conclude, as a matter of law, that a serious threat to order exists whenever a student, without reasonable provocation, touches a teacher in a hostile, angry, refractory, or otherwise unconsented to manner on or within school property during school hours, or during school sponsored activities.

This rule need not be interpreted as encouraging the use of force or restraint by teachers, even when such force or restraint is authorized. Rather, by defining, pursuant to the District's written policy, certain circumstances which may require or at least authorize "maintaining order," the rule may assist teachers more thoughtfully to determine whether to "use reasonable and prudent force and restraint," as authorized, for those purposes.

Here, as a matter of evidentiary fact, the ALJ found that, while class was in session, one student pushed and slapped Fredrickson's hand as Fredrickson appropriately attempted to intercept a note being passed, while another student struck Fredrickson

in the back. Accordingly, we conclude that the circumstances encountered by Fredrickson amounted to a breach of classroom order, or at least a serious threat thereto, justifying, if not requiring, the use of reasonable and prudent force to reestablish or maintain order.

In light of our conclusion, we now address the three stated bases for Fredrickson's dismissal.

### A.

#### *Insubordination*

■ The term "insubordination" as set forth in § 22–63–116 "imports a willful or intentional refusal to obey a reasonable order of a lawful superior on a particular occasion." *Ware v. Morgan County School District No. RE–3*, 748 P.2d 1295 (Colo.1988).

The order at issue here is the January 18, 1989, letter of reprimand from Fredrickson's principal in which the principal noted that she had previously advised Fredrickson "not to *ever* physically touch a child for disciplinary reasons." (emphasis added) The principal further stated, without qualification, that such "behavior is unacceptable and must cease."

We conclude that an order from a superior cannot be reasonable if, as here, it unequivocally divests a teacher of authority expressly granted to that teacher pursuant to a school district's own written policies. And, because the order given to Fredrickson was not reasonable, it logically follows that she could not have been "insubordinate" in failing to obey such an order.

Furthermore, we conclude that the force applied by Fredrickson, force which the ALJ described as "light, in the nature of a tap, push or shove," and as "not of a serious nature," was reasonable and prudent under the circumstances. Thus, Fredrickson cannot have been insubordinate because of the use of unreasonable or imprudent force or restraint.

### B.

#### *Neglect of Duty*

■ Neglect of duty occurs when a teacher fails to carry out her obligations

and responsibilities in connection with classroom and other school sponsored activities. *Blaine v. Moffat County School District RE No. 1, supra.*

■ Again, because Fredrickson responded to this incident in a manner authorized by the District's own written policies, we conclude that such response cannot be characterized as a "failure to carry out her obligations and responsibilities" in the classroom.

Therefore, we conclude that the Board's ultimate finding of neglect of duty is unsupported by the ALJ's findings of evidentiary fact. *See Forbes v. Poudre School District R–1*, 791 P.2d 675 (Colo.1990).

### C.

### *Other Good and Just Cause*

■ Colorado courts have not defined the term "other good and just cause." Other jurisdictions have interpreted the phrase to include any cause bearing a reasonable relationship to a teacher's fitness to discharge her duties. *Spurlock v. Board of Trustees*, 699 P.2d 270 (Wyo. 1985); *Welch v. Board of Education*, 136 Ariz. 552, 667 P.2d 746 (App.1983). The term has also been interpreted to include conduct which materially and substantially affects performance. *Mott v. Endicott School District No. 308*, 105 Wash.2d 199, 713 P.2d 98 (1986).

Once again, the only conduct at issue here is the appropriate and authorized actions Fredrickson took after being struck by two students who were interrupting the order of a classroom in session. We find nothing in the findings of the ALJ which could support a conclusion that Fredrickson's actions adversely impacted her fitness to discharge her duties or that those actions materially and substantially affected her performance. Thus, the Board's ultimate finding that Fredrickson's actions constituted "other good and just cause" for dismissal is not supported by the ALJ's

findings of evidentiary fact. *See Forbes v. Poudre School District R–1, supra.*

The order of the Board of Education terminating Fredrickson's employment is reversed, and the cause is remanded to the Board with instructions that Fredrickson be reinstated as a tenured teacher with full back pay and benefits.

RULAND and HODGES *, JJ., concur.

RULAND, J., specially concurs.

Judge RULAND specially concurring.

I concur with the result reached in the majority opinion. However, I write separately because I believe the rule announced in the majority opinion goes too far. In sum, I conclude that the mere touching of a teacher in an angry manner, standing alone, may not be deemed, as a matter of law, to constitute a serious threat to order in the school or the classroom in every case. Instead, to constitute a serious threat to order in the classroom or the school, I believe that more than one student must be physically present at the time the touching occurs.

One can foresee various factual situations in which a teacher is physically touched by a student who is angry but the touching does not pose a serious threat either to the teacher or to order in the classroom or in the school. In those cases, a physical response by the teacher may be inappropriate. Thus, a seven-year-old student with severe personal problems that are known to the teacher might place one hand on the teacher's arm in the privacy of an office in expressing anger or frustration. In that case, a physical response might not only be inappropriate, but it could generate subsequent disorder by the student in the classroom and the school.

Thus, absent a situation in which the teacher is acting to prevent or protect from an assault, I would limit the rule announced in this opinion to the factual scenario in which more than one student is

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo.Const.* art. VI, § 5(3), and

§ 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

present when the proscribed conduct occurs.